IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 9, 2020 Session

## JONATHAN KING, ET AL. v. DEAN CHASE

**Appeal from the Chancery Court for Davidson County**
**No. 16-0030-BC    Ellen Hobbs Lyle, Chancellor**

_____

### No. M2019-01084-COA-R3-CV

_____

Appellants, partners in a partnership that was the sole member of an LLC, filed suit against the manager of the partnership for alleged breach of fiduciary duties related to the sale of commercial real estate on behalf of the LLC. The manager and his business (a partner in the partnership, and together with manager, Appellees) filed counterclaims against Appellants, alleging breach of contractual and statutory duties. The trial court dismissed Appellants' lawsuit on grant of summary judgment, and we affirm that decision. Appellees' remaining claim for misrepresentation by concealment against Appellants was tried to a jury, which returned a unanimous verdict in favor of Appellees. Prior to the jury trial, the Business Court found, as a matter of law, that Appellees were entitled to indemnification by the LLC, and we affirm that decision. Because Appellants' tort of misrepresentation by concealment resulted in a premature distribution of the sale proceeds by the LLC, the LLC was unable to fully indemnify Appellees. As such, the Business Court entered judgment against Appellants for attorney's fees and expenses as compensatory damages. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

W. Gary Blackburn and Bryant Kroll, Nashville, Tennessee, for the appellants, David King, Jonathan King, and Taylor King.

Beau C. Creson, Gayle I. Malone, Jr., and Charles I. Malone, Nashville, Tennessee, for the appellees, Dean Chase, Sandra Chase, and D. F. Chase, Inc.[1]

_____

[1] In its December 7, 2018 order denying the Kings' motion to alter or amend the order granting summary judgment and dismissing their Complaint, *see* discussion *infra*, the trial court held, *inter alia*,

William Taylor Ramsey, Nashville, Tennessee, for the appellee, James W. Carrell Estate.

Lyndsay Claire Smith, Nashville, Tennessee, for the appellees, Lee Kennedy and Austin Pennington.

William Daniel Leader, Nashville, Tennessee, for the appellee, The Rosemary Grace Dunn 2004 Irrevocable Trust.

Robert Busby, Lithia, Florida, appellee, pro se.[2]

# OPINION

## I. Background

In late 2013, David Chase sought to purchase real estate located at One Music Row in Nashville (the "Property"), which he planned to sell for development as a hotel under the Virgin brand. To this end, David Chase created two entities for the purchase of the Property and the pre-development stage of the project—NV Partners, a Tennessee general partnership (the "Partnership"), and NV Music Row, LLC, a Tennessee limited liability company (the "LLC," and together with the Partnership, the "NV Entities"). At all relevant times, the NV Partners were: (1) Lee Kennedy (with a 26% interest); (2) The James W. Carrell Estate (with a 16.7% interest); (3) Robert Busby (with a 3.3% interest); (4) Austin Pennington (with a 15.2% interest); (5) The Rosemary Grace Dunn 2004 Irrevocable Trust (with a .3% interest); (6) Jonathan King and Taylor King (together, the

that

> The Chase Parties announced they are not seeking any relief on their claims asserted in Count I, paragraph 47, subsection (c) of the Second Amended Counterclaim and Third-Party Complaint, and that Sandra Chase[, Dean Chase's wife,] shall not be included as a party to the lawsuit.

Nonetheless, the Kings list Sandra Chase as an appellee. However, from our review, it appears she has no stake in the outcome of the appeal because there was no judgment for or against her in the trial court. In fact, the Kings did not assert any claims against Mrs. Chase, and she was dismissed from the underlying lawsuit. Regardless, as noted in Appellees' brief, to the extent necessary, Mrs. Chase adopts the arguments asserted therein.

[2] As discussed *infra*, by order of December 7, 2018, the trial court granted Lee Kennedy, Austin Pennington, the Rosemary Grace Dunn 2004 Irrevocable Trust, and the James Carrell Estate's joint-motion to be dismissed from the lawsuit. These parties are included as appellees only to the extent that Appellees Jonathan and Taylor King assert, as an appellate issue, that they are necessary parties on the issue of indemnification. For the reasons discussed herein, we conclude that these parties are not necessary parties and affirm the trial court's December 7, 2018 order dismissing them from the lawsuit. We note that, although Robert Busby did not join in the motion, he also is not a necessary party to the lawsuit.

"Kings," or "Appellants") (with a 16.7% combined interest); (7) David King (with a 5% interest);[3] (8) D.F. Chase, Inc. (with a 16.7% interest); and Sandra Chase (with a 5% interest).

As set out in the NV Music Row, LLC Operating Agreement ("Operating Agreement"), the purpose of the LLC was to "purchase, acquire, own, hold, develop and sell or otherwise dispose" of the Property. According to the Agreement of the Partnership of NV Partners (the "Partnership Agreement"), the Partnership was organized to "purchase, acquire, own, hold, develop and sell or otherwise dispose" of the Property "through a wholly owned limited liability company [, i.e., NV Music Row, LLC]." NV Partners was the sole member of NV Music Row, LLC. At the time of its formation in 2014, David Chase was designated as the Managing Partner of the Partnership. Section 5.1 of the Partnership Agreement vests the Managing Partner with sole "power or authority to act for or bind the Partnership," but it also provides the Managing Partner (and other partners) with indemnity.

Due to unrelated criminal matters involving David Chase, on February 15, 2015, the partners amended the Partnership Agreement "in order to reflect the resignation of David Chase as Managing Partner [and] the election of Dean Chase as successor Managing Partner." Because Dean Chase, individually, was not a partner in the venture, Dean Chase's title was listed as Manager. Pursuant to the amendment to the Partnership Agreement, Dean Chase, a principal of D.F. Chase, Inc., acted as the Manager of the Partnership at all relevant times.

The purchase money for the Property was comprised of contributions from the partners and a $4,500,000 loan from lender, Silverpeak (the "Silverpeak Loan"). In or about June 2015, Silverpeak decided not to exercise an option to convert the Silverpeak Loan into equity in the project. In the absence of repayment, on or about July 1, 2015, Silverpeak declared the NV Entities to be in default on the Silverpeak Loan and demanded repayment of all amounts due (i.e., $6,105,996.29) to avoid foreclosure of the Property. In an effort to raise the money to pay off the Silverpeak Loan, Dean Chase and Austin Pennington met with Avenue Bank. It was decided that a loan from Avenue Bank was not possible because three of the partners were unwilling or unable to personally guarantee the loan. As an alternative, partner Austin Pennington offered to guarantee half of the Avenue Bank loan if Jonathan King would guarantee the other half. Jonathan King refused, and the loan was denied.

---

[3] As noted herein, the trial court denied Appellees' motion to amend their complaint to add claims against David King. Although listed as an appellant, no judgment was entered against David King. Accordingly, any reference to the Kings or Appellants denotes Jonathan King and his wife, Taylor King.

After the Avenue Bank loan was denied, on or about September 10, 2015, another partner, The James W. Carrell Estate, offered to make a loan to the partnership to pay off the Silverpeak Loan (the "Carrell Estate Loan"). Specifically, the Carrell Estate offered a loan on the following terms: (1) $100,000 origination fee; (2) 15% annual interest; (3) three-month term with an option for a three-month extension; (4) $100,000 extension fee; (5) $750,000 default/foreclosure fee; and (6) all interest would be earned at the beginning of the applicable term. The partners, including the Kings, voted to approve the Carrell Estate Loan. However, after Steven Kirkham, the NV Entities' attorney, reviewed the foregoing terms, he advised Dean Chase, as Manager of the Partnership, that the 15% interest rate was usurious and illegal under Tennessee law.

On the day before Silverpeak was due to foreclose on the Property, and with no loan options available, Dean Chase caused partner D.F. Chase, Inc. to loan the NV Entities approximately $6,300,000 to pay off the Silverpeak Loan and save the project (the "D.F. Chase Loan"). In making the D.F. Chase Loan, Dean Chase spoke with Mr. Kirkham and instructed him to make the costs of the loan similar to those proposed in the Carrell Estate Loan but to ensure that the terms were compliant with Tennessee law. To this end, Mr. Kirkham arrived at the following terms for the D.F. Chase Loan: (1) $200,000 origination fee; (2) 7.25% annual interest; (3) three-month term with options for two three-month extensions; (4) $20,000 extension fee; and (5) all interest would be calculated as time elapsed rather than up front. Dean Chase did not seek Partnership approval prior to making the D.F. Chase Loan. Rather, he concluded that a vote was not necessary due to the fact that the partners had previously approved the Carrell Estate Loan, which was ostensibly the same as the D.F. Chase Loan, with the exception that the overall cost of the D.F. Chase Loan were approximately $37,744 less than those offered by the Carrell Estate and was legal under Tennessee law. It is undisputed, however, that the partners were advised of the D.F. Chase Loan within twenty-four hours of the distribution of the funds to pay off the Silverpeak Loan.

Having avoided foreclosure on the Property, on November 4, 2015, NV Music Row, LLC, with the vote of a majority of the partners, entered into a contract with Virgin to sell the Property for $11,500,000. The contract provided for a 35 day due diligence period, during which Virgin had the option to rescind. On December 1, 2015, Virgin exercised its option and withdrew its initial offer. Instead, Virgin lowered its purchase offer to $10,500,000. Following a meeting and vote, a majority of the partners directed Dean Chase to reject Virgin's lower offer, which he did. Thereafter, Virgin made another offer of $11,000,000 to purchase the Property. On or about December 2, 2015, a majority of the partners voted to accept Virgin's $11,000,000 offer. Although the Kings voted against the sale, after the majority of the partners voted to accept Virgin's offer, each of the partners, including the Kings, signed a Unanimous Consent directing Dean Chase to consummate the transaction on behalf of the NV Entities. Following the sale, the NV Entities were required, under Article VII of the Operating Agreement, to retain sufficient funds to pay any future contingent liabilities but were otherwise allowed to distribute the

remainder of the sale proceeds.  As discussed below, each partner had an obligation to disclose any known contingent liabilities.  No partner disclosed any potential future liabilities, and, on or about December 21, 2015, the NV Entities made a distribution of all but approximately $68,000 of the sale proceeds.  Each partner realized a profit of over 30% of his or her initial investment.

On December 31, 2015, approximately two weeks after distribution of the sale proceeds, the Kings, through their attorney, sent a letter to Mr. Kirkham, in which they: (1) requested to examine, audit, and copy the books and records of the NV Partners; and (2) placed Dean Chase, Mr. Kirkham, his law partners, and his firm on notice of potential claims for fraud, conversion, breach of fiduciary duty, and legal malpractice.  Thereafter, on January 12, 2016, Jonathan King filed a complaint against Dean Chase, in his capacity as Manager of the Partnership, in the Davidson County Chancery Court.  Specifically, Jonathan King alleged that Dean Chase violated sections 6.1(a) and (c) of the Partnership Agreement, and sections 61-1-403(b) and (c) of the Tennessee Revised Uniform Partnership Act ("TRUPA") by allegedly refusing Jonathan King access to the Partnership's books and records, and by not identifying the Partnership's accountant.  On January 27, 2016, the case was transferred to the Business Court Pilot Project ("Business Court," or "trial court").

On March 28, 2016, Dean Chase filed an answer denying liability.  Concurrent with his answer, Dean Chase filed a counterclaim against Jonathan King, personally.  Therein, Dean Chase alleged, *inter alia*, that Jonathan King "was planning to request the books and records of NV Partners and to file the present and the threatened future lawsuit(s) before the distributions were made to the partners of NV Partners on December 21, 2015."  In failing to "make . . . the other partners of NV Partners, or Mr. Chase aware of such plans prior to the . . . distribution being made," Dean Chase averred that Jonathan King's actions were intentional, knowing, reckless, and/or negligent and in contravention of his contractual duties.  Thus, Dean Chase sought a judgment for compensatory damages in the form of attorney's fees and costs incurred in defending the lawsuit on behalf of the Partnership.

On August 12, 2016, Dean Chase filed a Tennessee Rule of Civil Procedure 12 motion for judgment on the pleadings, wherein he sought dismissal of Jonathan King's original books and records claims.  Following a hearing, on September 29, 2016, the Business Court issued a memorandum and order dismissing Jonathan King's original claims as a matter of law.  In ruling on the motion, the trial court acknowledged Dean Chase's assertion that Jonathan King's "[c]omplaint should be dismissed on the[] ground[] [that Dean Chase] is not a proper party because he is not a Partner, only the Manager of the Partnership."  However, the Business Court found that Dean Chase, as the Manger of the Partnership, owed certain duties to the Partnership and was, thus, a proper party to King's lawsuit.  Nonetheless, the Business Court ultimately dismissed King's lawsuit, finding that it was moot as Mr. King did, in fact, obtain the records and

information he sought.

On January 6, 2017, Dean Chase filed a motion to amend his counterclaim and to add parties. Therein, he explained that, on or about December 19, 2016, Jonathan King,

> purporting to act on behalf of himself, Taylor King, NV Partners, and NV Music Row, LLC, filed a purportedly pro se Complaint against Dean Chase . . . and others in the Circuit Court for Davidson County, Tennessee (the "King Circuit Court Case"). The King Circuit Court Case alleges claims against Dean Chase . . . and others relating to the affairs and business of NV Partners. Despite realizing a profit of over 30% over approximately 18 months on their capital contribution in NV Partners, Jonathan and Taylor King seek damages of $15,000,000 from each defendant in the King Circuit Court Case.

***

> With Jonathan and Taylor King's recent filing of the King Circuit Court Case, it is clear that NV Partners cannot be wound down and dissolved without Court intervention, and that NV Partners and its partners, along with NV Music Row, LLC, must now be added as parties to this case . . . .

Following a hearing, the Business Court granted Dean Chase's motion to amend. On February 1, 2017, Dean Chase filed an Amended Counterclaim and Third-Party Complaint ("Amended Counterclaim"). The Amended Counterclaim added D.F. Chase, Inc. and Sandra Chase (together with Dean Chase and D.F. Chase, Inc., the "Chase Parties," or "Appellees") as plaintiffs. The Amended Counterclaim also added the NV Entities, and the individual partners as defendants. In relevant part, the Chase Parties asserted: (1) claims for compensatory damages against Jonathan King and Taylor King for their "intentional, knowing, reckless, and/or negligent failure to disclose" their plans to sue Dean Chase prior to approving the distribution of funds from the Partnership; and (2) claims for indemnity from NV Partners and NV Music Row, LLC for costs "incurred in providing Jonathan King information relating to NV Partners, defending the present lawsuit, and responding to Jonathan and Taylor King's orchestrated campaign against NV Partners." The Chase Parties further averred that the "costs and expenses all have been incurred and continue to be incurred on behalf of NV Partners [and] constitute legitimate business liabilities of NV Partners." The Chase Parties asserted a right to indemnification for these costs and expenses under both the TRUPA and the Partnership Agreement.[4]

---

[4] As to indemnification under the TRUPA, the Chase Parties averred:

> a. Judgment against Jonathan and Taylor King individually is proper pursuant to Tenn. Code Ann. § 61-1-307 because Jonathan and Taylor King are personally liable for

Based on these allegations, the Chase Parties sought the following relief:

1. That the Court require Jonathan and Taylor King to deposit into Court during the pendency of this action the $459,455.06 they were distributed from NV Partners, or some portion thereof, because such funds belong to NV Partners to pay its liabilities to Dean Chase and/or D.F. Chase, Inc.; or, alternatively, that the Court require all partners of NV Partners to deposit into Court their distributions from NV Partners, or some portion thereof, for the same purpose;

---

Dean Chase's and D.F. Chase's claim under Tenn. Code Ann. § 61-1-306 and NV Partners' assets subject to execution are insufficient to satisfy the claim.

b. Judgment against Jonathan and Taylor King individually is also proper pursuant to Tenn. Code Ann. § 61-1-307 because Jonathan and Taylor King are personally liable for Mr. Chase's claim under Tenn. Code Ann. § 61-1-306 and it would be an appropriate exercise of the court's equitable power.

49. As general partners of NV Partners and pursuant to Tenn. Code Ann. § 61-1-306, all partners of NV Partners are likewise jointly and severally liable for the liabilities that NV Partners owes to Dean Chase and D.F. Chase, Inc., even those such liabilities that have been caused by the acts and omissions of Jonathan and Taylor King.

As to their claim for indemnification under the Partnership Agreement, the Chase Parties cited Sections 5.3 and 5.1(b) of the Partnership Agreement. Section 5.3 provides:

Compensation. Except as may be hereafter approved by the Managing Partner and a Majority Vote of the Partners, no Partner or Affiliate of any Partner shall receive any salary, fee, or draw for services rendered to or on behalf of the Partnership, provided that any Partner or Affiliate of any Partner may be reimbursed for any expenses incurred by such Partner or Affiliate on behalf of the Partnership or otherwise in its capacity as a Partner.

Section 5.1(b) of the Partnership Agreement provides:

The Partnership will indemnify the Partners and hold them harmless and defend them from and against all claims and liabilities arising from or related to any act or omission done in good faith or in a manner that any Partner or Partners reasonably believed to be in or not opposed to, the best interests of the Partnership and consistent with the purpose of the Partnership, including all damages, judgments, fees, settlements, costs, and attorneys' fees actually and reasonably paid or incurred by any Partner or Partners in connection with an action, claim, suit, or proceeding incurred pursuant to this indemnity provision, The Partner or Partners will be indemnified to the fullest extent allowed under Tennessee law. In the event the Partnership does not have adequate funds or assets to fully indemnify any Partner, the Partners will not, under any circumstances, be required to indemnify the Partner or make an additional Capital Contribution to the Partnership for the purpose of indemnifying the Partner.

2. That the Court award Dean Chase and D.F. Chase, Inc. a money judgment for all costs and expenses incurred on behalf of NV Partners against Jonathan and Taylor King, or, alternatively, against NV Partners and all its partners including Jonathan and Taylor King;

\*\*\*

4. That the Court award Dean Chase and D.F. Chase, Inc. a money judgment for compensatory damages, treble damages, and punitive damages in an amount to be proven at trial against Jonathan King for inducement of breach of contract;

\*\*\*

6. That the Court award Dean Chase and D.F. Chase, Inc. a judgment that they are entitled to full and complete indemnity by the NV Entities and the partners of NV Partners;

\*\*\*

9. That the Court award Dean Chase and D.F. Chase, Inc. pre judgment interest;

10. That the Court award Dean Chase, D.F. Chase, Inc., and Sandra Chase their costs and attorney fees in this action;

In addition to the foregoing relief, the Chase Parties also requested a declaratory judgment that they had not engaged in any violation of the Partnership Agreement or the TRUPA.

As noted above, the Business Court dismissed Jonathan King's books and records lawsuit as moot, and there is no indication in the record that the King Circuit Court Case was transferred to the Business Court. Nonetheless, on March 22, 2017, the Business Court granted the Kings leave to file an amended complaint. After striking some of the proposed allegations, on April 26, 2017, the Kings filed a First Amended Complaint. On May 10, 2017, the Chase Parties filed a motion for partial judgment on the pleadings. In response, the Kings moved to amend their complaint, which the Business Court allowed. On June 19, 2017, the Kings filed a Second Amended Complaint (the "Complaint"), wherein they averred, in relevant part, that:

8. On or about February 20, 2015, David Chase resigned as managing partner and was replaced by his father, Dean Chase. Dean Chase was then

- 8 -

vested with the power to control all partnership decisions, with the exception of Material Matters, which require the approval of the Managing Partner and a Majority Vote of the Partners, according to the Partnership Agreement. "Material Matters" include, *inter alia*, refinancing the property, borrowing money, and the payment of compensation to any Partner.

9. Dean Chase became a manager but was not personally made a partner in the venture. As a result of this status, he owed a fiduciary duty to the partnership and to its members. This duty specifically forbade him from making business decisions in his own personal interest, but inimical to the best interest of the partnership.

The Kings alleged breach of fiduciary duty, intentional misrepresentation, promissory fraud, and constructive fraud against Dean Chase. Specifically, the Kings alleged that Dean Chase violated duties he owed to the Partnership in three ways, i.e.:

a) He paid or permitted to be paid fees and expenses related, to criminal charges against his son David from the funds of the Partnership [the "Expense Claims"];

b) He caused D.F. Chase, Inc., a corporation owned and controlled by him, to lend money to the Partnership, rather than pursuing borrowing options free of conflicts. In so doing, fees and interest were paid to D.F. Chase, and inured to the benefit of Dean Chase [the "Loan Claims"];

c) He negotiated, dominated and controlled the sale of partnership property at less than a fair market value to satisfy the personal needs of himself and D.F. Chase to the detriment of the Partnership and [the Kings] [the "Property Sale Claims"].

After time for discovery, on July 13, 2018, the Chase Parties filed a motion for summary judgment, seeking dismissal of the Kings' Complaint on the following grounds:

2. With respect to Loan Claims, the undisputed material facts establish as a matter of law that the loan from D.F. Chase to the Partnership was neither a breach of fiduciary duty, a breach of the operative Partnership Agreement of the Partnership, nor any misrepresentation or fraud in any manner. Irrespective, the undisputed material facts also establish that neither the Kings, specifically, nor the partners generally, suffered any damages as a result of such loan, which was a lowest cost option to save the Partnership from foreclosure proceedings on the land.

3. With respect to the [Property] Sale Claims, the undisputed material facts establish that, even if the Court presumes the Kings did not vote in favor of the sale of the property, the property was sold pursuant to a valid and enforceable vote of the partners holding a majority interest in the

Partnership and pursuant to the express requirements of the operative partnership agreement. Thus, [the] claims for breach of fiduciary duty and misrepresentation/fraud fail as a matter of law.

4. With respect to the Expense Claims, the undisputed material facts establish that Dean Chase did not pay or permit to be paid fees and expenses related to criminal charges against his son David Chase from the funds of the Partnership.

The Kings opposed the motion for summary judgment, which the Business Court heard on September 14, 2018. At the hearing, the Kings announced that they would not pursue the Expense Claims concerning the allegation that Dean Chase caused the Partnership to pay certain expenses related to David Chase's criminal matters. By order of September 27, 2018, the Business Court: (1) granted Dean Chase's motion for summary judgment and dismissed the King's Complaint in its entirety (we will discuss the Business Court's specific findings below); and (2) granted the Chase Parties' counterclaim concerning the request for declaratory judgment. In ruling on the declaratory judgment, the Business Court held:

> [T]he Counterclaim is that the second Count IV of the Counterclaim seeks a declaratory judgment that pursuant to Tenn. Code Ann. § 29-14-101 *et seq.*, Dean Chase and D.F. Chase did not undertake any act or omission in relation to NV Partners or its partners in violation of the Partnership Agreement that damaged NV Partners or its partners; and they did not undertake any act or omission in relation to NV Partners or its partners in violation of Tenn. Code Ann. § 61-1-101 *et seq.* that damaged NV Partners or its partners. These issues are decided herein in [the Chase Parties'] favor on summary judgment.

On November 29, 2018, the Kings filed a "Memorandum in Support of Motion to Alter or Amend Order of Dismissal and for Additional Findings of Fact and Conclusions of Law," asking the Business Court to review its grant of the Chase Parties' motion for summary judgment. However, from the record, it appears that the Kings did not file the actual motion to alter or amend until December 4, 2018, the day before the rescheduled pre-trial conference, *see infra*. As discussed below, by order of December 7, 2018, the Business Court denied the Kings' motion to alter or amend.

On November 6, 2018, the Kings filed a Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings, seeking dismissal of the Chase Parties' remaining counterclaims. As grounds, the Kings argued, *inter alia,* that Dean Chase was not a partner in the Partnership and, thus, neither the Partnership Agreement nor the TRUPA were applicable so as to give him a right of indemnity. The Chase Parties filed a response in opposition to the Kings' motion. On November 27, 2018, the Chase Parties filed a motion for leave to file a second amended counterclaim and third-party complaint.

- 10 -

The Kings opposed the motion. The Kings' Rule 12.03 motion and Chase Parties' motion to amend were set for hearing on November 30, 2018. Following the hearing, the Business Court entered an order on December 3, 2018. Therein, the court granted the Chase Parties' motion to amend, "with the exception of the proposed claims against David King personally," *see* further discussion *infra.*

Before ruling on the Kings' Tennessee Rule of Civil Procedure 12.03 motion, the Business Court, in its December 3, 2018 order, clarified:

> With respect to the substance of the [Rule 12.03 motion], the Court, after studying the law, the record and argument of Counsel, determines that the [motion] has identified that there exist some pure issues of law reserved for the Court to decide. The Court further determines that it is necessary to issue these rulings of law immediately to identify and segregate the issues to be tried by the jury in the upcoming December 10, 2018 jury trial. Lastly, on these issues of law, the King Parties prevail on dismissing some but not all of the Chase Parties' claims. Moreover, some pure issues of law are ruled upon herein on which the Chase Parties prevail.

The Business Court went on to make the following rulings, as matters of law:

1. The Business Court denied the Chase Parties' claim for indemnification under the Partnership Agreement, finding that Dean Chase was not a partner: "[T]he Partnership Agreement and Amendment to the Partnership Agreement establish that Dean Chase was not a partner, he was a manager of the partnership. Accordingly, he is not a party to the Partnership Agreement and, therefore, the Court concludes, Dean Chase cannot enforce the section 5.1(b) indemnity provisions against the Kings." Although the Business Court held that Dean Chase was not entitled to indemnification under the Partnership Agreement, the court ultimately held that, as the Manager of the partnership, Dean Chase was entitled to indemnification under section 48-249-115(c) of the Tennessee Revised Limited Liability Company Act (the "LLC Act"). In short, the Business Court held, as a matter of law, that the Chase Parties were entitled to indemnity from NV Music Row, LLC but granted the Kings' motion for judgment on the pleadings as to the Chase Parties' claim for indemnification from NV Partners under either the Partnership Agreement or the TRUPA, *see* further discussion *infra*.

2. The Business Court granted the Kings' Rule 12.03 motion in part, dismissing the Chase Parties' breach of contract and unjust enrichment claims.

3. The Business Court denied the Kings' Rule 12.03 motion with respect to the Chase Parties' claims for misrepresentation by concealment, holding that

- 11 -

as a matter of law [] pursuant to the plain, ordinary meaning of sections 1.10, 4.1, 10.1 and 10.2 of the Partnership Agreement and Tennessee Code Annotated sections 61-1-403 and 404(d), Jonathan and Taylor King had a duty to notify NV Partners of contingent liabilities and had an affirmative disclosure obligation to provide information to the partners concerning the partnership's business and affairs.

\*\*\*

The Court thus rules and it is ORDERED that as a matter of law the King Parties had a duty to reveal their claims against Dean Chase to the Partnership before they received their distribution.

4. The Business Court denied the Kings' claim that Dean Chase, who was not a partner, had no standing to enforce the duty to disclose provisions of the Partnership Agreement, to-wit:

In oral argument the King Parties asserted that Dean Chase, as a non-partner, does not have standing to assert the duty of disclosure a partner is required to perform under the Partnership Agreement and the Partnership Act. The Court comes to a different conclusion as to the Chase Parties' [] cause of action of the tort of misrepresentation by concealment.

The Court concludes, under the unique facts of this case where NV Music Row LLC had a contractual and statutory obligation to indemnify Dean Chase, that the King Parties' alleged intent and conduct of waiting to sue until after distribution of all the funds to partners, substantially thwarted and deprived Dean Chase of his ability to obtain indemnity from NV Music Row LLC and placed himself within the zone for persons whom the King Parties had a duty of disclosure with respect to the tort of misrepresentation by concealment. These facts, the Court concludes, furnish standing and a legal basis for the disclosure duty in the Partnership Agreement and Statute to apply to the Chase Parties' claims of misrepresentation by concealment.

The Business Court entered an order continuing the pre-trial conference until December 5, 2018 "[d]ue to recent filings on issues determinative of the scope of the jury trial to be conducted." Following the pre-trial conference, and as noted above, the trial court entered an order on December 7, 2018, wherein it denied the Kings' motion to alter or amend the order granting the Chase Parties' motion for summary judgment and the Kings' motion for continuance, *see* discussion *infra*. In addition, in its December 7, 2018 order, the Business Court: (1) granted the Kings' motion to bifurcate the trial and specified that "the Chase Parties' . . . claims against Jonathan and Taylor King, personally, for misrepresentation by concealment shall proceed to a trial by jury . . . on

- 12 -

liability only;" (2) held that, as requested by the parties, the court would appoint a special master "[a]s to quantification of damages subsequent to the jury trial;" and (3) noted that (based on their agreement), "the King Plaintiffs and Chase Parties have waived their right to a trial by jury on quantification of damages."

On December 10-12, 2018, the Chase Parties' counterclaim for misrepresentation by concealment was tried to a jury. The following witnesses testified: (1) Steve Kirkham, (2) Jonathan King, (3) Dean Chase, and (4) David King. The Kings also submitted an offer of proof from Jeffrey Burnside, the Kings' attorney, who was excluded as a witness, *see* discussion *infra*. At the close of the Chase Parties' proof, the Kings moved for directed verdict, which the Business Court denied. On December 10, 2018, the jury returned a unanimous verdict holding that both Jonathan King and Taylor King were liable for misrepresentation by concealment.

On January 22, 2019, the Kings filed "Motions Pursuant to Rule 50, 52, and Rule 59," wherein they moved the Business Court,

> under Rule 50.02 to set aside the verdict and judgment entered thereon . . . and for judgment entered in accordance with the Kings' motions for directed verdict, or in the alternative for a new trial pursuant to Rule 59.06 or 59.07. The Kings additionally file a second motion under Rule 52.02 to alter or amend this Court's order of dismissal and for additional findings of fact and conclusions of law; and under Rule 59.04 to alter or amend the judgment in this case.

The Business Court heard the Kings' motion on February 22, 2019 and denied the motion in full by order of March 1, 2019.

Having granted the Kings' motion for bifurcation, *supra*, the Business Court referred the case to a Special Master for determination of damages. On April 11, 2018, the Special Master submitted its report, wherein it recommended that damages comprised of attorney's fees and expenses be awarded to the Chase Parties as follows: (1) $68,650.98 awarded against NV Music Row, LLC; and (2) $609,117.81 awarded against Jonathan King and Taylor King, for a total of $677,768.79. On April 29, 2019, the Chase Parties moved the Business Court to adopt the Special Master's recommendations. The Kings did not oppose the motion. On May 20, 2019, the Business Court adopted the findings of the Special Master and entered judgment in accordance therewith. On June 5, 2019, the Business Court entered its final judgment in the case.

## II. Issues

The Kings appeal. They raise the following 19 issues in their brief:

1. Whether the trial court erred in granting Dean Chase's motion for summary judgment on grounds that the Kings could not prove damages?
2. Whether the trial court erroneously found failure to prove damages equates to a finding that Dean Chase did nothing wrong?
3. Whether the trial court erred in refusing to rule upon the Kings' two requests to make additional findings of fact and conclusions of law regarding ignored, admitted facts?
4. Whether the trial court's allowance of the Chase Parties to amend their transformative Counterclaim on the eve of trial and refusal to grant a continuance, was an abuse of discretion?
5. Whether the failure of the trial court to grant a continuance prejudiced the Kings, who had been unable to take discovery on the Chases' new claims, the meaning of a contingent liability of the Partnership, or to amend their discovery responses to list Jeff Burnside as a potential witness?
6. Whether the trial court erred in granting judgment on the pleadings in favor of the Chase Parties, who were non-movants, based in part on a prior summary judgment ruling, for claims that had never before been asserted until less than a week before trial?
7. Whether the trial court erred in finding that the Kings owed any duty to disclose information to Dean Chase by virtue of the Partnership Agreement or T.C.A. § 61-1-401?
8. Whether the Chases' version of a claim for misrepresentation by concealment states a claim under Tennessee law?
9. Whether the trial court erred in finding that Dean Chase was a "responsible person" entitled to mandatory indemnity by virtue of the Tennessee Revised LLC Act, T.C.A. § 48-249-115(c)?
10. Whether Dean Chase lacked standing to bring a claim for indemnification against the Kings individually?
11. Whether the Chases' unrecognized tort theory, seeking attorney's fees as their sole damages, is against the public policy of the State of Tennessee?
12. Whether the trial court erred in finding that the Kings were personally liable for the obligation of the Partnership or the LLC, when neither the statutes nor the relevant contracts allowed personal liability?
13. Whether the Third-Party Defendants were necessary parties pursuant to Tenn. R. Civ. P. 19.01?
14. Whether the trial court prejudiced the jury with frequent comments and interruptions of Kings' counsel during opening statements?
15. Whether the trial court erred in denying the Kings' motions for

mistrial?

16. Whether the trial court erred in failing to instruct the jury on a material fact, possibility, a Partner's right to access the books and records and the Kings' defense of unclean hands, as well as an instruction on the American Rule regarding attorney's fees.

17. Whether the trial court's exclusion of exhibits and a witness, Jonathan King's attorney, Jeffrey Burnside, on grounds that they had not been disclosed in the Kings' discovery responses answered over a year prior to the Chase Parties' amendment on the eve of trial to assert a new claim for misrepresentation, was an abuse of discretion?

18. Whether the evidence preponderated against any verdict for Taylor King?

19. Whether the trial court erred in denying a directed verdict for Taylor King when she was not called as a witness, the Chase Parties offered none of her deposition testimony, and no evidence of any statement made by her was proven at trial?

The issues raised by the Kings can be divided into several broad categories: (1) issues related to the grant of summary judgment; (2) issues related to the Chase Parties' claim against the Kings for misrepresentation by concealment; (3) issues related to the Chase Parties' right to indemnification/reimbursement; (4) miscellaneous rulings made by the Business Court prior to the jury trial; (5) issues related to the jury trial; and (6) damages. We will address the Kings' issues and arguments under the foregoing categories.

### III. Issues Related to the Grant of Summary Judgment

As noted above, the Kings' claims against Dean Chase fall into three categories: Expense Claims, Loan Claims, and Property Sale Claims. At the hearing on the motion for summary judgment, the Kings announced that they would not pursue the Expense Claims concerning the allegation that Dean Chase caused the Partnership to pay certain expenses related to David Chase's criminal matters. On appeal, the Kings do not dispute the trial court's grant of summary judgment on the Expense Claims; accordingly, we affirm the court's grant of summary judgment on this claim. We further note that the Kings' brief focuses primarily on the Property Sale Claims; however, in the interest of full adjudication, we will address the Business Court's holdings concerning both the Loan Claims and the Property Sale Claims.

We first note that "[a] trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination." ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v.***

*Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. "A fact is material 'if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Akers v. Heritage Med. Assocs., P.C.*, No. M2017-02470-COA-R3-CV, 2019 WL 104130, at *5 (Tenn. Ct. App. Jan. 4, 2019), *perm. app. denied* (Tenn. May 16, 2019) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). Further, "[a] 'genuine issue' exists if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Akers*, 2019 WL 104130, at *5 (quoting *Byrd*, 847 S.W.2d at 215).

The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either: (1) by affirmatively negating an essential element of the nonmoving party's claim, or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015) (italics omitted). Furthermore,

> "[w]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co*., [*Ltd. v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265. "Upon review, this Court considers 'the evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor.'" *Ray v. Neff*, No. M2016-02217-COA-R3-CV, 2018 WL 3493158, *3 (Tenn. Ct. App. July 20, 2018) (quoting *McCullough v. Vaughn*, 538 S.W.3d 501, 505 (Tenn. Ct. App. 2017) (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002))); *see also Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) (citing *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001)). The trial court may grant summary judgment only if "'both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion.'" *Helderman v. Smolin*, 179 S.W.3d 493, 500 (Tenn. Ct. App. 2005) (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)).

## A. Loan Claims

As discussed above, the Kings' Loan Claims are premised on their contention that Dean Chase, as Manager of the Partnership, breached certain fiduciary duties by causing his company, D.F. Chase, Inc., to make a loan to the Partnership in order to avoid foreclosure of the Property. Indeed, "the fiduciary relationship between an agent . . . and his [or her] principal imposes 'a duty to be careful, skillful, diligent and loyal in the performance of the principal's business,' and a cause of action for damages arises only when there is a breach of this duty." *Carter v. Patrick*, 163 S.W.3d 69, 75 (Tenn. Ct. App. 2004) (quoting *Thomson McKinnon Securities, Inc. v. Moore's Farm Supply, Inc.*, 557 F. Supp. 1004, 1011 (W.D. Tenn. 1983)).

In granting summary judgment with respect to the Loan Claims, the Business Court primarily focused on the fact that the Partnership suffered no damages as a result of the D.F. Chase Loan. Specifically the Business Court found "that the undisputed material facts of record establish that neither the [Kings] nor any of the partners in the Partnership sustained any damage with respect to the Loan Claims." In so finding, the trial court relied on the Kings' response to the Chase Parties' statement of undisputed material fact. Responses 8 and 12 are relevant:

> 8. On September 10, 2015, the Carrell Estate—a partner in the Partnership—offered to make a loan to the Partnership in order to pay off the Silverpeak Loan on the following terms: $100,000 origination fee; 15% annual interest; 3 month term with 3 month extension; $100,000 extension fee; $750,000 default/foreclosure fee; and all interest would be earned at the beginning of the appropriate term.
>
> **RESPONSE**: Undisputed for purposes of summary judgment.
>
> * * *
>
> 12. The D.F. Chase Loan had the following terms: $200,000 origination fee; 7.25% annual interest; 3 month term with two 3 month extensions; $20,000 extension fee; and all interest would be calculated as time elapsed rather than up front.
>
> **RESPONSE**: Undisputed that these were the terms of the loan that was never disclosed to the partners, in breach of Dean Chase's fiduciary duty to the partnership. The funds were paid without knowledge of the Partners.

Although Dean Chase did not notify the partners of the D.F. Chase Loan prior to distributing the funds from the D.F. Chase Loan, it is undisputed that that the D.F. Chase Loan was less expensive than the Carrell Estate Loan. As proof of this fact, the Chase

Parties provided a financial analysis prepared by Christopher Lovin. As found by the trial court, "Mr. Lovin opined that the loan made by [Dean Chase's] company was $37,000 cheaper/more favorable to the Partnership . . ., and this opinion is unrebutted in the record." Contrary to the trial court's statement that Mr. Lovin's opinion is "unrebutted," the Kings assert that the D.F. Chase Loan "was not less expensive because it does not account for legal fees incurred in preparing the loan note." The Business Court acknowledged this argument but ultimately concluded that "this assertion falls within the category of a 'metaphysical doubt,' which under Tennessee law is insufficient to defeat summary judgment. . . ." We agree. The Kings' assertion that the D.F. Chase Loan was not, in fact, more beneficial to the Partnership is not supported by any evidence. At the summary judgment stage, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. Here, the Kings have failed to meet this burden. As averred by the Chase Parties in their reply to the Kings' filings in opposition to the motion for summary judgment, "The Kings . . . have not provided any evidence of what those legal fees paid by the Carrel Estate would have been, what the amount of the legal fees purportedly charged to the Partnership were, or how any such fees made the D.F. Chase Loan more expensive than the proposed Carrell Estate Loan." We agree. Mere speculation is insufficient to show that the Partnership suffered any adverse effect in relation to the D.F. Chase Loan. Nonetheless, the Kings argue that the lack of damages is not, *ipso facto*, fatal to their Loan Claims; specifically, they contend that "the trial court erroneously found failure to prove damages equates to a finding that Dean Chase did nothing wrong." We disagree. "Proof of damages is an essential element of a fiduciary duty claim, as is causation of damages." *Morrison v. Allen*, 338 S.W.3d 417, 438 (Tenn. 2011) (quoting *Union Planters Bank of Middle Tenn. v. Choate*, No. M1999-01268-COA-R3-CV, 2000 WL 1231383 (Tenn. Ct. App. Aug. 31, 2000) and Restatement (Second) of Torts § 874). "That the plaintiff sustained damages as a result of an intentional misrepresentation, promissory estoppel or constructive fraud is an essential element of proof on the tort." *See*, *e.g.*, *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)).

As the party moving for summary judgment, it was the Kings' burden to show that the Partnership was somehow damaged by the use of the D.F. Chase Loan. From our review of the undisputed facts, they failed to meet this burden. The undisputed facts establish that, on or about July 1, 2015, Silverpeak called its loan, which was secured by the only asset of the Partnership, i.e., the Property. Thereafter, the partners met and agreed to pursue alternate funding through Avenue Bank. That funding, however, proved untenable because most of the partners (including Jonathan King) were unwilling to personally guarantee the Avenue Bank loan. As such, the Carrell Estate, as a partner, offered to make a loan under the terms discussed above. The majority of the partners voted to accept the Carrell Estate loan. However, on review of the terms, Mr. Kirkham,

the attorney for the NV Entities, advised that the loan proposed by the Carrell Estate was usurious and illegal under Tennessee law and recommended that Dean Chase, as the Manager of the Partnership, not accept the loan. Dean Chase followed Mr. Kirkham's advice. So, on the day before the scheduled foreclosure by Silverpeak, which would have resulted in loss of the Property, Dean Chase caused D.F. Chase, a partner, to make a loan to pay off the Silverpeak Loan. Although it is undisputed that Dean Chase did not seek partnership approval before making the D.F. Chase Loan, it is also undisputed (as discussed above) that the D.F. Chase Loan was more advantageous to the Partnership than the Carrell Estate Loan, which the Partnership had voted to accept. So, even allowing, *arguendo*, that Dean Chase should have consulted the partners prior to making the D.F. Chase Loan, his failure to do so must be viewed in light of the immediate threat of foreclosure and the fact that the partners previously approved a similar loan, i.e., the Carrell Estate Loan. In view of those contingencies, and the fact that the D.F. Chase Loan was less costly than the Carrell Estate Loan, the Partnership did not suffer any adverse effect from Dean Chase's action. Furthermore, it is undisputed that Mr. Kirkham, who represented the interests of the NV Entities, was aware of the D.F. Chase Loan and, in fact, consulted on the terms thereof. In the absence of proof of the essential element of damages, we conclude that the trial court correctly held that

> [a]s to all of the causes of action . . . pertaining to the Loan Claims, there are no facts in the summary judgment record of damages. Without proof on this essential element, the [Kings'] causes of action on the Loan Claims must be dismissed.

### B. Property Sale Claims

Concerning the Property Sale Claims, the Kings assert that Dean Chase further breached his duties to the Partnership by consummating the sale of the Property to Virgin for $11,000,000. It is undisputed that the Kings voted against the sale. In his deposition testimony, Jonathan King noted that he was not in agreement with the majority's decision to accept the $11,000,000 offer; rather, he stated that, "I was out voted. I mean, there was–everybody else had just—they—they were happy to not lose their money." According to the Partnership Agreement, a majority vote of the partners determines Partnership decisions. Together, the Kings hold a 16.7% interest in the Partnership. Accordingly, their vote, alone, would be insufficient to overcome the will of the remaining partners.

The Partnership Agreement defines "Material Matter," in relevant part, to include the "sale, finance or refinance of the Property." Under sections 1.10 and 5.1(a) of the Partnership Agreement, a "Material Matter" requires both: (1) the approval of the Manager, and (2) a majority vote of the partners of the Partnership. With the exception of the Kings, the undisputed evidence shows that the majority of the partners voted to direct Dean Chase to cause the Partnership to sell the Property for $11,000,000. As such,

the Business Court held that, "to withstand summary judgment, the [Kings] had to put forth evidence . . . that at least 50% of the partners (including the Kings) would not have voted to sell the [Property] if those partners had known about the alleged acts and omissions of [Dean Chase]." The Business Court ultimately concluded that "[t]here are no such facts in the summary judgment record" and specifically held that "the [Kings] have produced no testimony or evidence from another partner that such partner(s) was misled, threatened, under duress, or otherwise forced to vote in favor of the sale and that they otherwise would have voted against the sale." From our review, we agree.

During discovery, the Kings deposed Austin Pennington and John Palmer but did not depose any of the other partners. Messrs. Pennington and Palmer both stated that Dean Chase did not unduly influence or coerce their votes to move forward with the sale. In relevant part, Mr. Palmer testified that:

> Q: Did Mr. Chase threaten to foreclose on the property at any point?
> A: No.
> Q: Did Mr. Chase force you to vote—force the estate to vote to sell this property for Virgin for $11 million?
> A: No.
> Q: Did Mr. Chase exert any undue influence on the estate to secure their vote to sell this property for $11 million?
> A: No.

Likewise, Mr. Pennington testified that:

> Q: Did you ultimately sign the—I will hand you what's marked as—
> A: I mean, I ultimately agreed to sell, yes.
> Q: Was that—was your agreement procured by any wrongdoing by Mr. Chase in that regard?
> A: I don't think Mr. Chase did anything wrong. I don't know what you mean by "wrong," but I don't think he did anything incorrect.
> Q: So is it fair to say that you and Mr. Chase may have had a different opinion on whether to hold this and try to get more or sell now?
> A: Yes.
> Q: Was that all part of the discussions of all the partners at all times during this period?
> A: Yeah, and specifically on the phone call as well. That was a common theme, but Mr. Chase did nothing incorrect or wrong.

There is simply no evidence to suggest that Dean Chase exercised any undue influence over the decision of the majority of the partners to go forward with the sale of the Property. Despite the Kings' intimations that the D.F. Chase Loan somehow caused the partners to vote for a sale that the Kings imply was well below the market value of the Property, there is no factual link between these events. The D.F. Chase Loan was made to stop foreclosure on the Property. Had the loan not been made, the Property likely would have been lost in foreclosure, and there would have been nothing for the Partnership to sell. There is no indication that Dean Chase rushed to consummate the sale in an effort to recoup the D.F. Chase Loan at an earlier date. In fact, the terms of the D.F. Chase Loan included options for two, three-month extensions, with extension fees of $20,000, along with interest accruing "as time elapsed rather than up front." As such, the Chase Parties would have benefitted more by a delay (or cancellation) of the sale to Virgin. Regardless, the decision to go forward with the $11,000,000 sale was a separate transaction from the D.F. Chase Loan, and the sale was accomplished by a vote of the majority of the partners. By his own admission, Mr. King was simply "outvoted." In consummating the sale to Virgin, Dean Chase was merely complying with the will of the partners, including the Kings, who ultimately signed the Unanimous Consent allowing the sale to move forward. Had he done otherwise, Dean Chase would have violated his fiduciary duty as Manager of the Partnership. Accordingly, the Business Court did not err in granting his motion for summary judgment on the Property Sale Claims.

### C. Kings' Motion to Alter or Amend and for Additional Findings of Fact Concerning Summary Judgment

As set out above, the Kings raise an issue as to "[w]hether the trial court erred in refusing to rule upon the Kings' two requests to make additional findings of fact and conclusions of law regarding ignored, admitted facts in their brief." As set out in their brief, the Kings' entire argument on this issue is:

> The issues undecided by the trial court prejudiced the Kings at trial. These were at the heart of the Kings' defenses, including unclean hands and lack of good faith. Importantly, Chase's admitted conflict of interest, his failure to market the Property at all, the short-sale of the Property causing losses to the Partners of over $7 million, and the concealed D.F. Chase Note, went directly to the Kings' discovery of Chase's impropriety, their "thoughts" of exploring a lawsuit, and when these matters occurred. Had the trial court ruled upon the Kings' motion, it would have been obvious that the basis for granting summary judgment was not supported by the undisputed facts of the case.
>
> Thus, the trial court's refusal to rule upon the Kings' motions to alter or amend and for specific findings of fact was not only error, it caused numerous additional errors in the jury instructions and the court's conduct

of the trial, which prejudiced the Kings.

In the first instance, the Kings' argument fails to comport with the requirements of Tennessee Rule of Appellate Procedure 27(7). Under Rule 27, for each issue raised, the appellate brief must include

> [a]n argument . . . setting forth: (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues).

Here, the Kings have included neither factual allegations nor legal citations to support their argument.

Furthermore, although the Kings allege that the Business Court "refused to rule" on their motions to alter or amend and for additional findings of fact, the record shows that the trial court did not "refuse to rule." Rather, as discussed above, the Business Court denied the motions as untimely because the Kings failed to docket the motions for hearing prior to the jury trial. As stated in its December 7, 2018 order,

> [w]ith respect to the motion of the King Parties to continue the December 10, 2018 trial, now limited to liability, it is ORDERED that to the extent that motion continues to be asserted, it is denied.
>
> First, by the time of the December 10, 2018 trial, this case will have been pending for 2 years and 11 months from its January 12, 2016 filing.
>
> Additionally, the Kings' motion to alter or amend the September 27, 2018 summary judgment ruling is not a basis for a continuance because any delay connected with that motion is of the Kings' own making in several ways. It was the Kings who sought an extension from August 2018 to September 2018 for responding to and conducting oral argument on the motion for summary judgment. Then, after the Court entered its summary judgment ruling, there was a 30 day or so time between issuance of the September 27, 2018 summary judgment ruling and the December 10, 2018 trial to file and have the motion to alter or amend heard. It was not until November 29, 2018, that a Memorandum in support of altering and amending was filed by the Kings.
>
> It is therefore additionally ORDERED that the motion of the King Parties to alter or amend and for additional findings with respect to the September 27, 2018 summary judgment is denied for failure to docket and

be ruled upon prior to the December 10, 2018 trial of this case.

Having determined that the Business Court denied the motions, as opposed to refusing to address them, the Kings' contention does not form a basis for reversal. Although the trial court did not address the Kings' motions substantively, "[a] trial court's ruling on a motion to alter or amend may be reversed only for an abuse of discretion." *Harmon v. Hickman Comm. Healthcare Svcs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020). A trial court abuses its discretion when the reviewing court is firmly convinced that the lower court has made a mistake in that it affirmatively appears that the lower court's decision has no basis in law or in fact and is, therefore, arbitrary, illogical, or unconscionable. *See, e.g., Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Because the Kings failed to docket their motion in a timely manner, we cannot conclude that the trial court abused its discretion in denying same. That being said, this Court has reviewed the propriety of the Business Court's grant of the Chase Parties' motion for summary judgment and has concluded, *supra*, that the Business Court did not err in granting the motion in full. As such, there is no basis for reversal.

## IV. Issues Related to the Chase Parties' Claims against the Kings for Misrepresentation by Concealment

The crux of the Chase Parties' misrepresentation by concealment claim is that the Kings committed a legal wrong or otherwise violated their duties under the Partnership Agreement by failing to inform Dean Chase, NV Partners, and the other partners, prior to the distributions of monies from the NV Entities, of their intention to file a lawsuit against Dean Chase for actions he allegedly took as Manager of the Partnership. Based on the concealment of this fact, the Chase Parties assert that the Kings caused NV Entities' assets to be distributed to the partners, thus rendering the LLC financially unable to satisfy the Chase Parties' right to indemnification for damages (in the form of attorney's fees and costs) that the Chase Parties accrued in defending against the Kings' claims that sought to undo the decision of the majority of the partners to sell the Property to Virgin for $11,000,000.

The jury rendered a unanimous verdict finding that the Kings were liable for misrepresentation by concealment. Concerning the *prima facie* elements of a misrepresentation by concealment claim, Tennessee Pattern Jury Instruction 8.38 provides:

> 1. The defendant concealed or suppressed a material fact;
> 2. The defendant was under a duty to disclose the fact to the plaintiff;
> 3. The defendant intentionally concealed or suppressed the fact with the intent to deceive the plaintiff;
> 4. The plaintiff was not aware of the fact and would have

- 23 -

acted differently if the plaintiff knew of the concealed or suppressed fact; and

5. As a result of the concealment or suppression of the fact, the plaintiff sustained damage.

*See also* **Chrisman v. Hill Home Dev., Inc.**, 978 S.W.2d 535, 538-39 (Tenn. 1998) (citations omitted). As set out in their brief, the Kings assert that the Chase Parties failed to meet their burden on *prima facie* elements 1, 2, and 5. We will address each of these elements against the record.

## 1. Concealment or Suppression of a Material Fact

Concerning this element, the Kings argue that any plan they may have had to file suit against Dean Chase was merely a "thought" or "plan for future action" and, as such, is insufficient to satisfy this element. The question of whether the Kings' actions rose to the level of concealment or suppression of a material fact is a question of fact for the jury. It is well settled that when an appellate court reviews a jury's verdict, it "may not reweigh the evidence or make credibility determinations, and it must construe the evidence in the light most favorable to the verdict." **Hall v. Derrick**, No. W2003-01353-COA-R3-CV, 2004 WL 2191016, at *3 (Tenn. Ct. App. Sept. 24, 2004). A jury verdict will not be set aside if there is any material evidence to support the verdict. Tenn. R. App. P. 13(d). "Material evidence is 'evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case.'" **Meals ex rel. Meals v. Ford Motor Co.**, 417 S.W.3d 414, 422 (Tenn. 2013) (quoting **Knoxville Traction Co. v. Brown**, 89 S.W. 319, 321 (Tenn. 1905)). This Court has described "substantial and material evidence" as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" **Jones v. Bureau of TennCare**, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (quoting **Papachristu v. Univ. of Tenn.**, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)). When reviewing the trial record, we must "assume the truth of all evidence that supports the verdict and discard all countervailing evidence." **McLemore ex rel. McLemore v. Elizabethton Med. Inv'rs. Ltd. P'ship**, 389 S.W.3d 764, 776 (Tenn. Ct. App. 2012) (citation omitted). "[I]f the record contains any material evidence to support the verdict the jury's findings must be affirmed." **Id.** (citation omitted).

We first review the proof concerning whether the Kings' considering or planning to file suit against Dean Chase was a material fact. This Court has explained that,

> [i]n the context of a claim of fraudulent or negligent misrepresentation[,] a material fact has been defined as a reasonable person would attach importance to its existence or non-existence in determining a choice of action in the transaction in question; or the maker of the representation

- 24 -

knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining a choice of action, although a reasonable person would not so regard it.

*Homestead Grp., LLC v. Bank of Tennessee*, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009) (citing *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003)).

During the jury trial, Mr. Kirkham testified that the Kings' failure to contest the sale of the Property was material to the partners' decision to distribute the proceeds, to-wit:

Q. . . . If Jonathan and Taylor King had come back to you and said, "We object," would NV Music Row have distributed these mon[ies] to the partners?
A. No. Our standard on any deal—this deal, like any other—if someone, a partner, had come back and said, "We object," then I'm sure there would have been a discussion of "What do you object to? Why are you objecting?" and try to understand what amounts may be objectionable. Maybe it's all of it. Maybe it's a small portion. If it were a portion, then we would distribute what we could. If it were more than a portion or all of it, I guess there'd be a discussion about what to do. If that doesn't work, then we would pay it into court and let a court decide how to distribute the money.
Q. If Jonathan and Taylor King had come to you before the distribution and said, "We're going to sue Dean Chase," would NV Music Row have distributed this $4.3 million of funds to the partners?
A. We wouldn't have known what to distribute to them. We wouldn't have known numbers. We wouldn't have known how to do that. I guess if it had been something like that, it sounds to me like we probably would have said, "How do we resolve this?" If we can't resolve it, we probably would have—the word is "interplead," but that means we'd pay it in court with a lawsuit[, and] [l]et [t]he Court decide how to handle it.
Q. If Jonathan and Taylor King said, "We haven't decided if we're going to sue, but we're exploring suing the manager of this [partnership]," would the NV entities have distributed the money?
A. That would be the same situation. Whether they say they're going to sue or they actually sue or they're thinking about suing, it's the same outcome.
Q. What if they came to you and said, "We're not sure whether we're going to sue or not, but we sure are going to request the books and records, and we want to see an audit of all the financials?" Would NV Music Row have distributed the money at that time?
A. No. Because there would be that there's an obvious issue to be concerned, and again, even—you don't know exactly how much to give

everybody at that point. You don't know if moneys are going to have to be held back. I suppose if we could limit it in a very small way, but that would be impossible, I think, for a situation like that.

Q. Would the fact that Jonathan and Taylor King were exploring or thinking about the possibility of filing a lawsuit be a material fact that NV Music Row, NV Partners and Dean Chase as manager of these entities need to know in determining whether the entities can distribute the money?

[The Court overrules the Kings' objection to the question, and Mr. Kirkham proceeds to answer]

A. I'm hesitating because there's kind of two parts to that. So take the Kings out of it for a minute. If it were the broker that we were talking about earlier and somebody knew that the broker might be bringing a lawsuit, if the Kings had known that or anybody else in the partnership had known that, the expectation would be that that partner come forward and say, "Hey, I think that broker is going to sue us. Maybe we need to have some money available to pay him in case he does." If the Kings had known that, then we would expect them to come forward and tell. In this case, it's not only the partner [who] acknowledges somebody outside. In my mind, it's even worse that it's actually a partner inside that has this formulation of an idea of suing. So I –but yes. I mean if they had plans on suing, they should have told everybody. "Hey, look. We've got a problem[.]" I think the other partners would want to know.

Q. [] I want to put a finer point on that for you. As the lawyer for these entities, would it have been material for you to know even if they were thinking of [] suing?

A. Any lawsuit against—potential lawsuit against the partnership would be material.

Q. What about any potential lawsuit or contemplated lawsuit against Dean Chase as manager for the partnership? Would that also be material?

A. It would be material because the partnership has indemnity obligations back to Dean as the manager of the entity, and so anybody involved in the entity who had potential of some claims liability would be material.

Mr. Kirkham's testimony clearly establishes that the Kings' contemplation of any lawsuit, whether merely a "thought" or "plan for future action," was a material fact because "a reasonable person would attach importance to its existence or non-existence in determining a choice of action in the transaction in question [, i.e., distribution of the sale proceeds]." *Homestead Grp.,* 307 S.W.3d at 752. Mr. Kirkham's undisputed testimony is that the Partnership would have acted differently had the Kings informed the partners of the fact that they were contemplating a lawsuit. Having determined that there is sufficient evidence from which the jury could have found that the facts withheld by the

Kings were material facts, we now turn to the question of whether the Kings, in fact, withheld or suppressed that information.

Johnathan King's video deposition was played for the jurors. Therein, he testified, in relevant part, as follows:

Q. Were you planning on bringing legal action against Dean Chase prior to December of 2016—2015?
A. I was exploring that.
Q. When did you begin exploring bringing legal action related to NV Partners?
A. Immediately after the sale.
Q. Sometimes we like to be precise as lawyers. When you say "immediately," are you talking a matter of days?
A. Yes.

***

Q. Let me back up, Mr. King. So is it fair to say that in November you were considering exploring legal action?
A. Yeah, December—November, December.

***

Q. It was prior—prior to the sale of the property, you were—
A. It was—
Q. –considering—
A. –the last few weeks is when I really felt—
Q. The last few weeks—
A. –I was going to explore.
Q. Okay.
A. Yeah.

***

Q. Irrespective of the exact time you decided, hey, I'm going to go forward with legal action, is it fair to say that as of December 9th, 2015, you were very angry at the way this partnership had unfolded, or upset?
A. Yeah, I was not happy.
Q. And you were considering bringing a lawsuit about—
A. Yes.
Q. –Your complaints?
A. Yes.

In addition to the foregoing testimony, certain emails were admitted into evidence as Trial Exhibits 7, 8, 9, and 15. These emails corroborate Jonathan King's testimony and further establish that his wife, Taylor King, who (with Jonathan King) jointly owned a single partnership interest, was aware of the potential lawsuit. In summary, these emails establish:

- On December 18, 2015, after being informed that both Jonathan King and Taylor King would need to give their respective approvals before sale proceeds were distributed, Mr. King stated that he needed to "talk to [his] attorney;"
- The Kings accepted their distribution later on December 18, with the caveat that, "Jonathan and Taylor King are NOT happy with the outcome of this deal;"
- Nine days after the distribution, i.e., December 30, 2015, Jonathan King sent an email, on which Taylor King and the Kings' lawyer were copied, to another partner. Therein, Mr. King stated that the Kings had contacted an attorney and were "vigilantly pursuing a cause of action for breach of fiduciary duties . . . [against] Dean [Chase,]" and "would like to have you join us in seeking justice;"
- On December 31, 2015, the Kings' attorney sent a demand letter on their behalf that was intended to "put Dean Chase, D.F. Chase, Inc., [and others] on notice of potential claims by [the Kings] for fraud, conversion, breaches of fiduciary duties [and other claims]."

Based on the content of the foregoing correspondence, it is clear that the Kings were contemplating their lawsuit immediately following the sale of the Property. However, they waited until after the distribution of the sale proceeds before making their plans known to the Partnership. As Mr. Kirkham further testified:

Q. So jumping back to Mr. King's email to you on December 18 saying that he was going to talk to his attorney, did he come back or did Mrs. King come back and tell you that they objected?
A. No.
Q. Did they come back and say that they were going to sue?
A. No.
Q. Did they come back and say they were exploring a lawsuit?
A. No.
Q. Did they come back and say they were going to request the books and records and audits?
A. No.
Q. And I think we've got this, but if they had said that, as lawyer for the entities, would the entities have acted differently and not distributed these funds?
A. Whether it was the Kings or anyone else, if there had been any potential raised that there was [sic] thoughts of a lawsuit against the entities, then we

would stop. We couldn't make a distribution. We wouldn't know how much to distribute to everyone.

Timing, as the saying goes, is everything. Here, as Jonathan King testified, the Kings were contemplating their lawsuit "immediately" after the sale of the Property. Yet, they waited to disclose their plans until after the proceeds of the sale were distributed. Had the Kings disclosed their potential lawsuit prior to the distributions, the disputes could have been settled, and the Partnership would have retained monies necessary to cover any liability. The foregoing evidence establishes three of the *prima facie* elements: First, the Kings "concealed or suppressed a material fact." The evidence shows that the fact of a potential lawsuit was material and that the Kings did not disclose their plan to file suit prior to the distribution of Partnership funds. Second, the foregoing evidence establishes that the Kings "intentionally concealed or suppressed the fact with the intent to deceive the plaintiff." By his own testimony, Jonathan King had plans for a potential lawsuit "immediately" after the sale of the Property. A reasonable jury could infer that the Kings' decision to withhold their plans until after distribution of the sale proceeds was made with the intent to procure their share of the sale proceeds at the earliest date while still seeking to set aside the sale. Finally, the foregoing evidence establishes that, if the Kings had disclosed their plans for suit prior to distribution of the sale proceeds, the Partnership "would have acted differently" in that it would have withheld distribution until any disputes were settled. The evidence is sufficient to meet the Chase Parties' burden concerning the first, third, and fourth *prima facie* elements.

## 2. The Kings' Duty to Disclose

In its December 3, 2018 order, the Business Court found, as a matter of law, that the Kings owed a duty to disclose their plan to file suit against Dean Chase, to-wit:

> [T]he Court rules as a matter of law that pursuant to the plain, ordinary meaning of sections 1.10, 4.1, 10.1 and 10.2 of the Partnership Agreement and Tennessee Code Annotated sections 61-1-403 and 404(d), Jonathan and Taylor King had a duty to notify NV Partners of contingent liabilities and had an affirmative disclosure obligation to provide information to the partners concerning the partnership's business and affairs.

The Business Court's determination that the Kings' owed a duty to disclose is based on its interpretation of the Partnership Agreement and the TRUPA. Both the interpretation of statutes and the interpretation of contracts are questions of law and, therefore, require a *de novo* review on appeal with no presumption of correctness given to the trial court's conclusions of law. *See State v. Williams*, 38 S.W.3d 532, 535 (Tenn. 2001) (indicating that the construction of statutes and the application of the law to the facts are questions of law); *see also Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) (holding that "[t]he interpretation of a contract is a matter of law that requires a *de novo* review on

appeal").

In their brief, the Kings assert that, "The Kings' only fiduciary duty was to the Partnership. They owed no fiduciary duty to Dean Chase. No contract exists between the Kings and Dean Chase. Thus, no duty arises . . ." We disagree. Although Dean Chase was not a partner in NV Partners, pursuant to the amendment to the Partnership Agreement, he was named as the Manager of the Partnership. Furthermore, Mr. Chase's wholly-owned company, D.F. Chase, Inc., was a partner. Thus, if the Operating Agreement, Partnership Agreement, or the TRUPA creates a duty of disclosure on the part of the Kings, then that duty certainly extends to Dean Chase as Manager and to the other Chase Parties as partners.

Turning to the Partnership Agreement, it provides, in relevant part, that distributions may be made out of the Available Cash Flow of the NV Partners. The Partnership Agreement defines "Available Cash Flow" as the "total cash on hand less all Partnership obligations, **contingencies** and reasonable working capital requirements **as determined by the partners**." (Emphases added). The Partnership Agreement further provides that the sale of the Property is a "Liquidating Event." Thus, prior to distribution of the sale proceeds, the partners were obligated to "take full account of the Partnership's liabilities" so as to "establish[] a reserve fund which is deemed reasonably necessary . . . **to provide for any contingent or unforeseen liabilities or obligations of the Partnership**." (Emphasis added).

Likewise, the Operating Agreement provides that the person(s) "responsible for overseeing the winding up and liquidation of the Partnership, shall take full account of the Partnership's liabilities and . . . [shall] establish[] . . . a reserve fund which is deemed reasonably necessary, in the opinion of the Managing Partner, to provide for any contingent or unforeseen liabilities or obligations of the Partnership."

Tennessee Code Annotated section 61-1-403 of the TRUPA provides that each partner shall furnish, "[w]ithout demand, any information concerning the partnership's business and affairs reasonably required for the proper exercise of the partner's rights and duties under the partnership agreement. . . ." Tenn. Code Ann. § 61-1-403. The comments to this provision explain that section 61-1-403 "imposes an affirmative disclosure obligation on the partnership and partners." Tenn. Code Ann. § 61-1-403, cmt. 3. Likewise, section 61-1-403 of the TRUPA provides that a "partner shall discharge the duties to the partnership and the other partners under this act or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing." Tenn. Code Ann. § 61-1-404(d). The comments explain that "a disclosure duty may, under some circumstances, also spring from the Section 404(d) obligation of good faith and fair dealing." Tenn. Code Ann. § 61-1-403, cmt. 3. Based on Mr. Kirkham's undisputed testimony, *supra*, the Kings' lawsuit (and any liability stemming therefrom) would be a "contingent or unforeseen liability" under the Partnership

Agreement and would also constitute "information concerning the partnership's business and affairs" under Tennessee Code Annotated section 61-1-403. As explained by the Business Court in its December 3, 2018 order:

> [T]he King Parties' actions and plans to file claims against Defendant Dean Chase concerning his management of the Partnership had a bearing on, implicated and constituted a contingent liability for the Partnership. The contingent liability was that if the King Parties did not prevail on their claims against Dean Chase he had a right to be paid indemnity under the NV Music Row LLC Operating Agreement by the Partnership as ruled above . . . . This plan of the Kings to sue Dean Chase, because it could result (and has resulted) in liability to the Partnership and has had implications for and a bearing on Partnership affairs, imposed an obligation on the Kings to state their plans as per the duties set forth in sections 1.10, 4.1, 10.1 and 10.2 of the Partnership Agreement and Tennessee Code Annotated sections 61-1-403 and 404(d).

The Business Court further held that Dean Chase's status as an officer of the Partnership, and the indemnification obligations of the LLC that arose as a result of that status, imposed a duty on the Kings to disclose their plans to sue Mr. Chase, to-wit:

> The Court concludes, under the unique facts of this case where NV Music Row LLC had a contractual and statutory obligation to indemnify Dean Chase, that the King Parties' alleged intent and conduct of waiting to sue until after distribution of all the funds to partners, substantially thwarted and deprived Dean Chase of his ability to obtain indemnity from NV Music Row LLC and placed himself within the zone for persons whom the King Parties had a duty of disclosure with respect to the tort of misrepresentation by concealment. These facts, the Court concludes, furnish standing and a legal basis for the disclosure duty in the Partnership Agreement and Statute to apply to the Chase Parties' claims of misrepresentation by concealment.

In arguing that they had no duty to disclose, the Kings rely on this Court's opinion, *Macon County Livestock Market, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986), wherein the Court explained:

> The Tennessee Supreme Court has held:
>
> > In all cases, concealment or failure to disclose becomes fraudulent only when it is the duty of a party having knowledge of the facts to discover them to the other party: 2 Pom. Eq., sec. 902. And this author, in the same section says: "All the instances in which the duty to disclose exists and in

which a concealment is therefore fraudulent, may be reduced to three distinct classes:

1. Where there is a previous definite fiduciary relation between the parties.
2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this last class."

*Macon Cty.*, 724 S.W.2d at 349 (citing *Domestic Sewing Machine Co. v. Jackson*, 83 Tenn. 418, 424-25 (1885); *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947); *Dozier v. Hawthorne Development Co.*, 262 S.W.2d 705, 711 (Tenn. Ct. App. 1953)). Contrary to the Kings' argument, and in line with the Business Court's holdings, the relationship between the Kings and the Chase Parties (i.e., Dean Chase's status as Manager of the Partnership and the other Chase Parties' status as partners) clearly created a duty, on the part of the Kings, to disclose to the Chase Parties. Nonetheless, the Kings argue that "contingent liabilities," which are not specifically defined in either the Operating Agreement or the Partnership Agreement, are inherently speculative and, thus, should not be considered a material fact. The evidence does not support the Kings' argument. As noted above, Mr. Kirkham's testimony establishes that the Partnership would have postponed distribution of the sale proceeds had the Kings informed the partners or Dean Chase of their intent to file the lawsuit. As the Business Court held, "[T]he King Parties' actions and plans to file claims against Defendant Dean Chase concerning his management of the Partnership had a bearing on, implicated and constituted a contingent liability for the Partnership." We agree. Not only did the Kings' failure to disclose affect the decision to distribute the sale proceeds, but (as discussed *infra*) the Kings' failure to disclose also interfered with Dean Chase's duty, under the Operating Agreement, to wind down the NV Entities while retaining sufficient funds to cover its liabilities.

### 3. Damages

We will address the Chase Parties' right to indemnification and the question of whether attorney's fees and costs constitute compensable damages below. As set out in context above, the Business Court found that the Kings' failure to disclose their plans to sue prior to the distribution of the sale proceeds "substantially thwarted and deprived Dean Chase of his ability to obtain indemnity from NV Music Row LLC . . . ." We agree. To the extent that the Chase Parties are entitled to indemnification from the LLC, the Kings' failure to disclose their lawsuit prior to distribution of the sale proceeds created a shortfall in LLC proceeds and deprived the Chase Parties of full indemnification. As Mr. Kirkham's uncontested testimony establishes, as a result of the

- 32 -

December 21, 2015 distributions, NV Music Row, LLC was left with $68,650.98 to pay any contingent liabilities. Dean Chase testified that this amount was insufficient to reimburse the Chase Parties for amounts paid toward legal fees and expenses incurred in defending against the Kings' lawsuit. In other words, if the Chase Parties are entitled to indemnity, *see discussion infra*, then the Kings' breach of their duty of disclosure resulted in the LLC having insufficient funds to satisfy the Chase Parties' right to indemnification, and the Chase Parties suffered damages. As noted by the Business Court:

> The Kings' intentional, knowing, reckless, and/or negligent failure to disclose the plans described above was done for the inequitable purpose of receiving a distribution of funds to which they knew they were otherwise not entitled and which they knew should have been available to NV Partners to pay for the substantial expense that has been and will continue to be incurred by Dean Chase and D.F. Chase on behalf of NV Partners, the partners of NV Partners, and NV Music Row.
> Since at or around December 31, 2015, when the Kings sent their first demand related to the present lawsuit, Dean Chase has incurred and continues to incur substantial costs and expense in defending the present lawsuit. . . .

> \*\*\*

> The Court thus rules and it is ORDERED that as a matter of law the King Parties had a duty to reveal their claims against Dean Chase to the Partnership before they received their distribution.

Having determined that there is sufficient evidence from which a jury could have determined that the Chase Parties' met their burden to show a *prima facie* case for misrepresentation by concealment, we now turn to the question of whether the Chase Parties are entitled to indemnification for their damage.

### V. Issues related to the Chase Parties' Right to Indemnification/Reimbursement

As noted above, in its December 3, 2018 order, the Business Court held, as a matter of law, that the Chase Parties were entitled to indemnification from NV Music Row, LLC. Specifically, the court held:

> The facts are undisputed that Dean Chase served as the manager of NV Partners, and that NV Partners is the sole member of NV Music Row, LLC. These facts fit the requirements of Tennessee Code annotated section 48-

- 33 -

249-102; 401(e); and 115(c), (e) and (g) for Dean Chase to qualify as an individual to whom indemnity is provided. It is also established in the record, by the summary judgment order entered September 27, 2018, dismissing the Plaintiffs' claims, that under section 48-249-115(c) of the Revised LLC Act the Chase Parties were "wholly successful . . . in the defense of any proceeding." Thus, the essential elements for indemnity under Tennessee Code Annotated sections 48-249-102; 401(e); and 115(c), (e) and (g) are established. It is therefore ORDERED that the Chase Parties are awarded indemnity to recover their costs and expenses in this action from NV Music Row, LLC.

Tennessee Code Annotated section 48-249-115 of the LLC Act provides, in relevant part:

(c) Mandatory indemnification. An LLC shall indemnify a responsible person who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the person was a party, because the person is or was a responsible person, against reasonable expenses incurred by the person in connection with the proceeding.

\*\*\*

(g) Indemnification of officers, employees and agents.

(1) An officer of the LLC who is not a responsible person is entitled to mandatory indemnification under subsection (c), and is entitled to apply for court-ordered indemnification under subsection (e), in each case, to the same extent as a responsible person.

(2) The LLC may indemnify and advance expenses to an officer, employee, independent contractor or agent of the LLC who is not a responsible person, to the same extent as a responsible person.

Tenn. Code Ann. §§ 48-249-115(c); (g)(1)-(2). The LLC Act defines a "responsible person," in pertinent part, as

an individual who is or was a director of a director-managed LLC, a manager of a manager-managed LLC or a member of a member-managed LLC, or an individual who, while a director of a director-managed LLC, a manager of a manager-managed LLC, or a member of a member-managed LLC, is or was serving at the LLC's request as a director, manager, officer, partner, trustee, employee or agent of an employee benefit plan or any other foreign or domestic entity.

Tenn. Code Ann. § 48-249-115(a)(6).  The LLC Act defines an "officer" as anyone who has been "delegate[d] the rights and powers to manage and control the affairs of the LLC" by its members, irrespective of whether that person is a member himself or herself. Tenn. Code Ann. §§ 48-249-102; -401(e).

The Operating Agreement outlines the single purpose of the LLC, which is to "purchase, acquire, own, hold, develop and sell or otherwise dispose" of the Property. The Partnership Agreement states that NV Partners was organized to "purchase, acquire, own, hold, develop and sell or otherwise dispose" of the Property "through a wholly owned limited liability company [, i.e., NV Music Row, LLC]."  In December 2015, all of the partners of NV Partners, including the Kings, signed a Unanimous Consent directing Dean Chase, as the Manager of the Partnership, to cause NV Music Row, LLC to sell the Property to Virgin for $11,000,000.  The Partnership Agreement, Operating Agreement, and Unanimous Consent directed Dean Chase to act on behalf of the Partnership to sell the Property.  The Kings filed suit against Dean Chase in his capacity as the Manager of Partnership for actions he took at the direction of the partners.  The foregoing facts are not disputed.  Under the LLC Act definition, there can be no doubt that Dean Chase was acting as an officer in that the Operating Agreement delegated, to Dean Chase, "the rights and powers to manage and control the affairs of the LLC," namely, the sale of the Property.   Accordingly, Dean Chase clearly was an officer of the LLC.  Nonetheless, the Kings argue that Dean Chase was not a "responsible person" as used in Tennessee Code Annotated section 48-249-115(a) and defined in Tennessee Code Annotated section 48-249-115(a)(6);  as such, the Kings argue that he is not entitled to indemnification under the LLC Act.  This argument ignores the fact that, even allowing *arguendo* that Dean Chase was not a "responsible person," there can be no question (on the undisputed facts) that he was an officer of the LLC.  Thus, under Tennessee Code Annotated section 48-249-115(g), which allows for indemnification of "officers" to the "same extent as a responsible person," he is entitled to indemnification from the LLC.

As set out in the LLC Act, an LLC is required to indemnify an officer "who was wholly successful, on the merits or otherwise, in the defense of any proceeding in which the person was a party, because the person is or was" an officer of the LLC.  Tenn. Code Ann. § 48-249-115(c).   The Kings argue that the Chase Parties were not "wholly successful" and, thus, are not entitled to indemnification under the LLC Act.  We disagree.

As explained by this Court,

[i]n determining whether plaintiff is entitled to indemnification as a matter of law, it must be determined whether she was "wholly successful, on the merits or otherwise" in defending [the] lawsuit. The Tennessee statute was patterned after the indemnification section of the Revised Model Business

- 35 -

Corporation Act. Like the language in T.C.A. § 48-18-503, Section 8.52 of the RMBCA entitles a director to indemnification where that director is "wholly successful, on the merits or otherwise."

The Official Comment to the Model Act gives light to the meaning of those words.

> A defendant is "wholly successful" only if the entire proceeding is disposed of on a basis which does not involve a finding of liability . . .

> The language in earlier versions of the Model Act and in many other state statutes that the basis of success may be "on the merits or otherwise" is retained. While this standard may result in an occasional defendant becoming entitled to indemnification because of procedural defenses not related to the merits, e.g., the statute of limitations or disqualification of the plaintiff, it is unreasonable to require a defendant with a valid procedural defense to undergo a possibly prolonged and expensive trial on the merits in order to establish eligibility for mandatory indemnification.

Rev. Model Bus. Corp. Act § 8.52 Official Comment (1984).

Courts have interpreted the phrase "on the merits or otherwise" to include dismissal of the case with prejudice and settlement with the dismissal of claims. See generally 18B Am. Jur. 2d Corporations § 1911 (1985); *see also* ***Wisener v. Air Express International Corp.***, 583 F.2d 579 (2d Cir. 1978) (applying Illinois law); ***Galdi v. Berg***, 359 F.Supp. 698 (D. Del. 1973); ***B & B Invest. Club v. Kleiner's Inc.***, 472 F. Supp. 787 (E.D. Pa.1979); ***Merritt–Chapman & Scott Corp. v. Wolfson***, 321 A.2d 138 (Del. Super. 1974).

***Sherman v. Am. Water Heater Co***., 50 S.W.3d 455, 461 (Tenn. Ct. App. 2001) (holding that a party who obtained dismissal through a settlement agreement without incurring any personal liability was "wholly successful"). Having affirmed the trial court's grant of the Chase Parties' motion for summary judgment, by which it dismissed all of the Kings' claims against the Chase Parties with prejudice, it is clear that the Chase Parties were, in fact, "wholly successful." Further, with respect to court-ordered indemnity, the court may, upon application of the officer, "order indemnification if it determines . . . the [officer] is fairly and reasonably entitled to indemnification in view of all the relevant circumstances." Tenn. Code Ann. § 48-249-115(e). Under the particular facts of this case, it was reasonable for the Business Court to "order indemnification [on] it[s]

determin[ation] . . . the [officer] is fairly and reasonably entitled to indemnification in view of all the relevant circumstances." Tenn. Code Ann. § 48-249-115(e). From the totality of the circumstances, we conclude that the trial court correctly held that the Chase Parties are entitled to indemnification from the LLC.

As discussed above, the Kings' misrepresentation by concealment led to a lack of funds in the LLC to cover all of the Chase Parties' fees and expenses. The question, then, is whether the Chase Parties are entitled to recover from the Kings personally. Throughout these proceedings, the Kings have maintained that section 5.1(b) of the Partnership Agreement precludes personal liability. Section 5.1(b) of the Partnership Agreement provides that:

> In the event the Partnership does not have adequate funds or assets to fully indemnify any Partner, the Partners will not, under any circumstances, be required to indemnify the Partner or make any additional Capital Contribution to the Partnership for the purpose of indemnifying the Partner. (Partnership Agreement § 5.1(b) []). A "Capital Contribution" is defined as "any cash, cash equivalents, promissory obligations, or the fair market value of other property which a Partner contributes or is deemed to have contributed to the Partnership with respect to the issuance of any Partnership Interest." (Partnership Agreement § 1.10).

In the trial court, the Kings referred to the foregoing section as an "anti-clawback" provision and essentially argue that, even if they did commit fraud . . . this provision immunizes them from liability and damages. The Business Court denied the argument in holding that the Kings were not entitled to judgment on the Chase Parties' pleadings, to-wit:

> The Chase Parties are not seeking a "clawback" of distributions from the Kings. Instead, the Chase Parties are asserting independent claims of legal wrongs by the Kings that caused the Chase Parties damages. Thus, even if the relevant provision did contain a "clawback" prohibition, it would be inapplicable to the Chase Parties' claims. Irrespective, the provision at issue does not prohibit a "clawback" or return of improper distributions of Available Cash Flow, as defined by the Partnership Agreement. Instead, it simply prohibits a partner from having to personally indemnify someone or from having to make additional capital contributions for purposes of indemnity. As previously explained, the Chase Parties are not seeking an indemnity award against the Kings personally and they are not seeking an order requiring the Kings to make additional capital contributions to NV Partners [footnote omitted]. Thus, the Kings are not entitled to dismissal of

the Chase Parties' claims based on Section 5.1(b) of the Partnership Agreement. . . .

We agree with the Business Court. It must be noted that the Kings' decision to bring suit against Dean Chase was a unilateral decision on their part, and the Kings did not seek the other partners' approval or vote before proceeding with the lawsuit. The crux of the Kings' initial books and records lawsuit against Dean Chase concerned his management of the Partnership and potential violation of the Partnership Agreement. At the time the Kings filed their lawsuit, the Property had been sold and distributions made; thus, the business of the NV Entities was concluded, and the only remaining item was to wind down. The Kings' lawsuit stopped the winding down of the Partnership and caused Dean Chase to have to defend against the lawsuit in order to conclude the business of the NV Entities. When the Kings' initial claims were dismissed as moot, they added the Loan Claim and the Property Sale Claim—this despite the fact that the Kings had signed the Unanimous Consent directing Mr. Chase to consummate the sale of the Property to Virgin and had accepted their distribution from the sale proceeds without raising any concerns. Had the Kings been successful on these claims, the decision of the majority of the partners to sell the Property for $11,000,000 would have been undermined. Therefore, as the Manager of the Partnership, it was incumbent on Dean Chase to defend against these claims so as to affect the will of the majority of the partners. The Kings certainly had a right to bring their lawsuit, but they also had an obligation and duty to disclose their plans to the partners **before** the sale proceeds were distributed. This is because the Kings' claims triggered potential liability on the part of the NV Entities. As found by the Business Court in its December 3, 2018 order, these claims "had a bearing on, implicated and constituted a contingent liability for the Partnership. The contingent liability was that if the King Parties did not prevail on their claims against Dean Chase he had a right to be paid indemnity [from] NV Music Row LLC." Here, the Kings did not prevail on any of their claims against the Chase Parties, who were entitled to indemnification by the LLC. If the Kings had satisfied their duty to disclose their plans to file suit in a timely manner, the LLC would have delayed distribution of the sale proceeds until the lawsuit was resolved. Had that occurred, the LLC would have been able to indemnify the Chase Parties. However, due solely to the Kings' concealment of the material fact of their pending lawsuit, the LLC was rendered insolvent. The Kings, as the only tortfeasors, are solely liable for any damages arising from their concealment.

## VI. Issues Related to Miscellaneous Rulings Made Prior to the Jury Trial

### A. Chase Parties' Motion to File a Second Amended Counterclaim

In its December 3, 2018 order, the trial court granted the Chase Parties' motion to amend their complaint "with one exception. The one exception is that the amendment to add allegations and claims against David King, personally, contained in Count III of the proposed Second Amended Counterclaim and Third-Party Complaint, is denied as

untimely." The Business Court allowed the remainder of the motion to amend, reasoning that,

> while it is filed on the eve of trial, the amendment does not contain anything new or different that the King Parties are unaware of and incapable of defending. The amendment corrects an incorrect citation and correctly cites to the Revised LLC Act as the applicable law, and conforms the pleadings to the facts and claims which were obtained in discovery. The Court denies the King Parties' assertion that they have not had sufficient notice to defend. In so concluding, the Court adopts the following explanation provided by the Chase Parties:
>
>> [T]he Proposed Second Amended Counterclaim simply streamlines the claims that will be pursued by the Chase Parties at the trial of this matter. By way of example only, the Proposed Second Amended Counterclaim eliminates the cause of action seeking that some or all of the partners deposit into Court their distributions from the NV Entities during the pendency of this action, as the Chase Parties have elected not to pursue that relief during the course of the case. While the Proposed Second Amended Counterclaim more clearly delineates the claims set forth in the Chase Parties' proposed jury instructions, all such claims were adequately pled in the Amended Counterclaim. . . . In other words, there is no lack of notice or undue prejudice to the Kings because the claims that will be litigated at trial were already pled in the Amended Counterclaim. The Kings had a full opportunity to seek discovery on these claims, including the option to serve contention interrogatories if they were confused about the contours or bases of the claims. They chose not to do so. Further, there has been no bad faith or repeated failure to cure any deficiencies on the part of the Chase Parties, this amendment merely seeks to streamline and more clearly delineate the claims that will be presented to the jury. For these reasons, the Chase Parties should be allowed to make such amendments.

The decision to grant or deny a motion to amend the pleadings lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 237 (Tenn. 1993); *McCullough v. Johnson City Emergency Physicians, P.C.*, 106 S.W.3d 36, 44 (Tenn. Ct. App. 2002); *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001). Tennessee Rule of Civil Procedure 15.01 allows a plaintiff to amend his or her complaint once as a

matter of course so long as it is done before the opposing party has filed a responsive pleading. Thereafter, a plaintiff may only amend the complaint with the consent of the opposing party or by leave of the trial court. Tenn. R. Civ. P. 15.01.

Leave to file an amended complaint must be "freely given when justice so requires." Tenn. R. Civ. P. 15.01. In deciding whether "justice [] requires" that an amendment to the complaint be allowed after a responsive pleading has been filed, the trial court must consider the following factors: (1) the plaintiff's undue delay in filing the motion; (2) lack of notice to the opposing party; (3) bad faith by the moving party; (4) repeated failure to cure deficiencies by previous amendments; (5) undue prejudice to the opposing party; and (6) futility of the amendment. **Hawkins**, 86 S.W.3d at 532-33; **Isbell v. Travis Elec. Co.**, No. M1999-00052-COA-R3-CV, 2000 WL 1817252, at *15 (Tenn. Ct. App. Dec. 13, 2000).

From our review, by their motion to file a second amended counterclaim, the Chase Parties did not seek to add any new substantive claims (with the exception of those against David King, which were denied). Rather, the Chase Parties sought to: (1) correct a typographical error in their amended counterclaim by substituting the applicable statute, i.e., the Tennessee **Revised** Limited Liability Act, as opposed to the Tennessee Limited Liability Company Act; and (2) streamline the causes of action asserted against the Kings. In support of their motion, the Chase Parties included an exhibit containing a side-by-side comparison between the amended counterclaim and their proposed second amended counterclaim.

Concerning the typographical amendment, the Kings assert that, "The amendment of the operative statute to the Revised LLC Act in T.C.A. § 48-249-115 was a fundamental change in the Chase's cause of action." We disagree. In both the amended counterclaim and the second amended counterclaim, the Chase Parties assert a claim for indemnification against the LLC. The Chase Parties attached the Operating Agreement to both versions of their counterclaim. The Operating Agreement defines the applicable "Act" to mean "the Tennessee **Revised** Limited Liability Company Act." (Emphasis added). The fact that the applicable "Act" was mislabeled in the amended complaint as the "Tennessee Limited Liability Company Act" is not fatal to the Chase Parties' motion to amend. There can be no doubt that the Kings were on notice of the applicable Act by virtue of the Operating Agreement and inclusion of that agreement as an appendix to the Chase Parties' amended counterclaim. Furthermore, a comparison of the applicable provisions of the Tennessee LLC Act and the Revised LLC shows that they are substantively identical. *Compare* Tenn. Code Ann § 48-243-101, *with* Tenn. Code Ann. § 48-249-115. As such, we conclude that the Kings were not prejudiced by this amendment.

Concerning the other amendments, we agree with the trial court's conclusion that these changes "more clearly delineate the claims that [would] be presented to the jury."

In short, there is no indication that the Chase Parties, by their second amended counterclaim, sought to add any additional claims against the Kings. Rather, given the protracted procedural history of the case and the fact that parties and claims had been dismissed from the action, the "streamlining" of the issues that would be presented to the jury was necessary to avoid confusion. Regardless, because the Chase Parties did not seek to add additional or new claims or theories, we conclude that the Kings were not prejudiced by the trial court allowing the second amended counterclaim; thus, there was no abuse of discretion warranting reversal.

### B. Kings' Motion for Continuance

The Kings further contend that they were prejudiced by the Business Court's denial of their motion for continuance after the court allowed the Chase Parties to file their second amended counterclaim. Specifically, the Kings argue that they were "prejudiced by the Chase[s'] Amendment a week before trial, which asserted a new cause of action based on a separate and distinct statutory provision under the Tennessee[] Revised LLC Act." The decision to grant or deny a motion for continuance rests in the sound discretion of the trial court. *See, e.g.,* **Blake v. Plus Mark, Inc.**, 952 S.W.2d 413, 415 (Tenn. 1997). "The ruling on the motion will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Id.* As discussed above, the Kings suffered no prejudice due to the filing of the Chase Parties' second amended counterclaim. There were no new claims added by the amendment, and the Kings were on notice from the outset that the Chase Parties were seeking indemnification under the Revised LLC Act as the revised Act is the only statute referenced in the Operating Agreement that was attached to both the amended counterclaim and the second amended counterclaim. The Kings had ample opportunity to prepare their defense. As such, we cannot conclude that the Business Court abused its discretion in denying the Kings' motion for continuance.

### C. Dismissal of Third-Party Defendants, i.e., all partners except the Kings

The Chase Parties' second amended counterclaim added the other partners as third-party defendants. However, at a hearing on December 5, 2018, the Chase Parties announced that they were not seeking relief from any partner except the Kings. Following this announcement, the remaining partners filed a joint motion seeking to be dismissed from the lawsuit as there were no pending claims against them. The Kings filed a response in opposition to the joint motion, wherein they argued, *inter alia*, that the remaining partners were necessary parties on the issue of indemnification. In its December 7, 2018 order, the trial court granted the joint motion and dismissed all partners except the Kings. The order states, in relevant part:

> It is ORDERED that the motion of the Third-Party Defendants . . . is
> granted, and the Movants are dismissed as parties to the lawsuit. This ruling

- 41 -

is based upon these findings and conclusions.

- There are no claims in the lawsuit asserted by Jonathan, David, or Taylor King against the Movants.
- With the December 3, 2018 entry of judgment on the pleadings dismissing Count II paragraph 51 claims of Dean Chase, D.F. Chase, Inc., and Sandra Chase (the "Chase Parties") in the second amended counterclaim and third-party complaint for indemnity against NV Partners, no claims by the Chase Parties remain which involve the Movants.
- With the agreement announced in open court on December 5, 2018 by the Movants to the Chase Parties' Count VI Claim for Judicial Dissolution and agreement for that to occur now or anytime in the future, there is nothing in dispute as to the Movants and they are not necessary parties.

In view of our holding that the tortious conduct of the Kings was the sole cause of the damages incurred by the Chase Parties, we agree with the Business Court that the other partners are not necessary parties to the lawsuit. In short, but for the sole actions of the Kings in failing to disclose their plan to file suit, there would have been sufficient funds in the LLC to indemnify the Chase Parties. As noted above, the Kings' decision to bring suit, as well as the decision to withhold those plans, was theirs alone. As such, the Kings are solely responsible for damages, and the other partners are not necessary parties.

## VII. Issues Related to the Jury Trial

### A. Jury Instructions / Mistrial

As set out in the Kings' brief:

On December 5, 2018, the Kings filed their proposed Special Jury Instructions. On December 7, 2018, the Chase Parties submitted a Notice of Filing Redacted Prior Court Orders, which removed all reference to the King's claims. This meant that the Kings could not even testify about the clearly relevant claims they had brought against Dean Chase in order to explain when they had learned of the conduct and formed the intent to bring them. The trial court's redacted Order granting summary judgment removed all reference to the trial court's holding that the Kings could not prove damages and were out voted. This precluded the Kings from showing the jury the circumstances of the vote approving the sale.

In arguing that the trial court erred in charging the jury, the Kings maintain that:

The trial court erroneously charged the jury that the court had previously found that all of the Kings' claims were dismissed and Dean Chase had done nothing wrong, that he was owed indemnity, and that the Kings were under a duty to disclose their plans to Dean Chase. The Chancellor refused to charge the language from the summary judgment order itself[, i.e., "As to all of the causes of action of the Second Amended Complaint pertaining to the Loan Claims, there are no facts in the summary judgment record of damages. Without proof on this essential element, the Plaintiffs' causes of action on the Loan Claims must be dismissed."].

Whether a jury instruction is erroneous is a question of law and is, therefore, subject to *de novo* review with no presumption of correctness. ***Nye v. Bayer Cropscience, Inc.***, 347 S.W.3d 686, 699 (Tenn. 2011) (citation omitted). "Under Tennessee law the jury charge will be viewed in its entirety and considered as a whole in order to determine whether the trial judge committed prejudicial error." ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 446 (Tenn. 1992). A jury instruction "will not be invalidated as long as it fairly defines the legal issues involved in the case and does not mislead the jury." ***Id.*** We first note that the Kings' argument fails to specify the actual portion of the jury charge they challenge. However, from their argument, *supra*, we deduce that the following instruction is the basis of their challenge:

I also am going to state again the following information and background events which occurred before the lawsuit was filed and some rulings that have already been made in the lawsuit as background of the case.

NV Music Row, LLC is a Tennessee company that was formed to buy, develop, and sell certain property near downtown Nashville for the purposes of building a hotel. NV Music Row, LLC is solely owned by NV Partners.

Dean Chase served as Manager of NV Partners.

This case was originally brought by Jonathan and Taylor King against Dean Chase. In their lawsuit, the Kings claimed that Mr. Chase, while acting as Manager of NV Partners, committed certain wrongs that damaged the Kings. Dean Chase denied the claims of the Kings, and filed a counter-lawsuit against the Kings for damages caused by their acts.

In the prior proceedings in this case, all of the claims the Kings brought against Mr. Chase were dismissed. In addition it has already been decided that Dean Chase and his business did not act or omit to do anything that damaged NV Partners or its partners.

Also it has already been determined that Dean Chase and his business are entitled to compensation from NV Music Row, LLC for costs incurred in this lawsuit.

These matters have already been decided by the Court, and you may

- 43 -

hear about them some during the case.  You are bound by Tennessee law to follow the Court's rulings on these issues.

Furthermore, in their sixteenth issue, the Kings argue that the trial court erred in failing to instruct the jury on a partner's right to access to the books and records of the Partnership and the doctrine of unclean hands (on the part of Dean Chase).  Concerning a "books and records" instruction, as discussed above, the Kings' books and records lawsuit was dismissed as moot.  To the extent that their right to examine the books and records of the Partnership may have shown some state of mind or justification for their initiating a lawsuit against Dean Chase, the gravamen of the Chase Parties' fraudulent concealment claim did not rest on the question of whether the Kings were entitled to bring their suit.  Rather, the question before the jury was whether the Kings withheld their plan to bring the lawsuit.  Thus, the absence of a jury instruction indicating that a partner has a right to examine the books and records of the Partnership was not fatal to the jury charge.

Concerning the Kings' remaining arguments regarding the jury instructions, in view of our holdings above, wherein we affirm: (1) the Business Court's grant of summary judgment dismissing the Kings' claims against the Chase Parties; (2) its holding, as a matter of law, that the Chase Parties are entitled to indemnity from the LLC; and (3) its declaratory judgment that Dean Chase did not violate his duties to the NV Entities (i.e., that he did not have unclean hands), we conclude that there was no basis to charge the jury with the unclean hands doctrine.  Furthermore, for the reasons discussed below, instruction concerning the "American Rule" was not warranted in this case.  Accordingly, there is no basis for reversal on the jury instructions.

Because the Kings' issue concerning the trial court's denial of a mistrial also rests on the allegation that the jury instructions were flawed, we also conclude that the trial court did not abuse its discretion in denying a mistrial.  *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004) (stating that the decision whether to grant or deny a motion for mistrial rests within the sound discretion of the trial court and should not be reversed absent a clear showing of abuse of discretion).

### B. Jeffrey Burnside

The Kings assert that the Business Court committed reversible error in granting the Chase Parties' motion to exclude the testimony of Jeffrey Burnside, the Kings' attorney.  It is undisputed that the Kings failed to disclose Mr. Burnside as a potential witness during the discovery process.  Despite the Chase Parties' interrogatory, asking the Kings to identify all individuals with knowledge and claims and counterclaims in the case, the Kings waited until December 7, 2018, which was one business day before trial, to file an amended witness list, wherein they first disclosed their intent to bring Mr. Burnside as a witness.  Tennessee Rule of Civil Procedure 37.03 provides that, "A party who without substantial justification fails to supplement or amend responses to discovery

requests . . . is not permitted, unless such failure is harmless, to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Furthermore, Davidson County Local Rule of Court 29.01 provides:

> At least seventy-two (72) hours (excluding weekends and holidays) before the trial of a civil case, opposing counsel shall either meet face-to-face or shall hold a telephone conference for the following purposes:
>
> a. to exchange names of witnesses, including addresses and home and business telephone numbers (if not included in interrogatory answers) including anticipated impeachment or rebuttal witnesses; and
> b. to make available for viewing and to discuss proposed exhibits.

In ruling on the Chase Parties' motion to exclude Mr. Burnside, the Business Court stated:

> Mr. Burnside shall not be allowed to testify because we have rules that govern these proceedings. Under the rules, witnesses such as Mr. Burnside are to be designated in response to discovery. In this case, the right questions were asked, and Mr. Burnside was not listed as someone having knowledge. And so under Tennessee law, it's unfairly prejudicial on the eve of trial to come in with a surprise witness in the case. And that's what the rules are designed to eliminate, and This Court is enforcing that rule.

As noted by the Tennessee Supreme Court in *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992), "admissibility of evidence is within the sound discretion of the trial judge. When arriving at a determination to admit or exclude even that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." Concerning the exclusion of undisclosed witnesses, this Court has explained:

> The fact that the court can impose the sanction of not permitting the unnamed witness to testify, does not mean that it must do so. Generally, where a party has not given the name of a person with knowledge of discoverable matter, the court should consider the explanation given for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance. In the light of these considerations the court may permit the witness to testify, or it may exclude the testimony, or it may grant a continuance so that the other side may take the deposition of the witness or otherwise prepare to meet the testimony. *See*: 8 Wright and Miller, Federal Practice and Procedure, *supra*; 23 Am.Jur.2d Depositions and Discovery §

265 (1965).

***Strickland v. Strickland***, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981), *perm. app. denied* (Tenn. June 29, 1981). However, where a "party willfully, knowingly, and intentionally withheld the name of a person with knowledge of discoverable matter, the imposition of the sanction of not permitting that person to testify is strongly suggested." ***Id.*** (citation omitted); *see also* ***Brandy Hills Estates, LLC v. Reeves***, 237 S.W.3d 307, 316-17 (Tenn. Ct. App. 2006) (affirming the trial court's exclusion of witnesses, who, like Mr. Burnside, were disclosed "less than seventy-two hours prior to the commencement of the trial.").

Concerning their failure to disclose Mr. Burnside during discovery or within 72 hours of the jury trial, the Kings again assert that the Chase Parties' second amended counterclaim contained new claims against them. For the reasons discussed above, the second amended complaint merely streamlined the Chase Parties' existing claims. As such, we conclude that the Business Court's denial of Mr. Burnside's testimony was not an abuse of its discretion.

## C. The Kings' Opening Statement

In their fourteenth issue, the Kings assert that the Business Court prejudiced the jury by its frequent interruptions and comments during the Kings' attorney's opening argument. Turning to the record, the trial court's first interruption came several minutes into the opening:

> THE COURT: And, Mr. Blackburn, this is what the proof will show based on the witnesses that are going to be called *et cetera*. That's what our opening statement is about, correct?
> MR. BLACKBURN: Just as Mr. Creson's was, mine is as well.
> THE COURT: Yes. This is what you believe the proof will show by the witnesses that you've indicated will be called. All right. You may proceed.
> MR. BLACKBURN: This proof will show that. . . .
> THE COURT: Excuse me, Mr. Blackburn. Hearsay, if we're not going to have a certain witness. So if this is just what you believe
> MR. BLACKBURN: That is not hearsay, respectfully.
> THE COURT: You will remind us this is what the proof, you believe, will show, the admissible proof will show.
> MR. BLACKBURN: Your Honor, all of these statements are that, and I agree. . .
> THE COURT: All right.

The only other "interruption" in Mr. Blackburn's opening occurred when the Chase Parties' counsel objected to Mr. Blackburn's statements concerning matters that

- 46 -

had been excluded by grant of their motions in *limine*:

> MR. BLACKBURN: . . . [I]nto discovery in this case, [Jonathan King] learned other things that he had no way of knowing. One of those things had to do with funds that were charged to the closing. It had to do with money paid on a note. It had to do with various things that you'll see in these subsequent pleadings, that D.F. Chase advanced this money without even a promissory note to support it, that D.F. Chase—
>
> MR. CRESON: Object, Your Honor, in terms of motion *in limine*, the order that's been entered on that.
>
> THE COURT: Yes. The Court sustains the objection.
>
> MR. BLACKBURN: I presume that the jury is going to be shown those pleadings because the state of mind at that time
>
> THE COURT: Let's continue on with something else. You can complete the list that you were making. Let's move to the next item of it, please.
>
> MR. BLACKBURN: When you see the lawsuits that caused Mr. Chase to incur the funds, you will see that a great deal of it could not possibly have been known by him on December 21 of 2015 and was not. Now, when you conclude, when you hear the conclusion of all of this proof and you weigh it, what you're going to see is that no actual fact was ever, ever withheld from anyone at any time. Thank you.
>
> THE COURT: Thank you, Mr. Blackburn. Members of the jury, that completes our opening statements. . . .

The foregoing sections of the transcript constitute the only "interruptions" and comments by the trial court during Mr. Blackburn's opening statement. The first comments were warranted in that the Business Court was merely reminding Mr. Blackburn to limit his statements to proof he expected would be adduced through witness testimony. *See, e.g.*, ***Harris v. Baptist Mem'l Hosp.***, 574 S.W.2d 730, 732 (Tenn. 1978) (stating that opening statement is not evidence). "Opening statements 'are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove.'" ***State v. Gayden***, No. W2011-00378-CCA-R3-CD, 2012 WL 5233638, at *9 (Tenn. Crim. App. Oct. 23, 2012) (quoting ***Harris***, 574 S.W.2d at 732). Thus, it is well-settled that "[o]pening statements are not stipulations or evidence." ***Id.*** (citing ***Harris***, 574 S.W.2d at 732). The trial court's comments do not rise to the level of prejudicial statements against Mr. Blackburn or his case.

Concerning the second "interruption," the Business Court did not instigate the interruption. Rather, the court was merely ruling on an objection lodged by the Chase Parties' attorney. As set out in context above, after the trial court sustained the objection, Mr. Blackburn continued to argue that the jury should be apprised of certain pleadings. The trial court correctly denied any ruling on exhibits or evidence at that point in the

proceedings and urged Mr. Blackburn to continue with his opening. This does not constitute error.

## D. Denial of Taylor King's Motion for Directed Verdict

The Kings assert that the Business Court erred in denying Taylor King's motion for directed verdict because "[t]here was no proof from which a jury could have found that Taylor King was liable for the tort of misrepresentation by concealment." We disagree.

Tennessee Rule of Civil Procedure 50.02 provides, in relevant part, that

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within thirty (30) days after the entry of judgment a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; or if a verdict was not returned, such party, within thirty (30) days after the jury has been discharged, may move for a judgment in accordance with such party's motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

When reviewing a motion for directed verdict, this Court applies the same standard as the trial court. The court must "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion when there is any doubt as to the conclusions to be drawn from the evidence." *Akers v. Prime Succession of Tennessee, Inc.*, 387 S.W.3d 495, 509 (Tenn. 2012) (quoting *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 130-31 (Tenn. 2004)). The court should not weigh the evidence nor should it evaluate the credibility of the witnesses. *Plunk v. Nat'l Health Investors, Inc.*, 92 S.W. 3d 409, 412 (Tenn. Ct. App. 2002); *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 428-29 (Tenn. Ct. App. 2015). The granting of such motion "is appropriate only when the evidence is insufficient to create an issue for the jury to decide, or when reasonable minds can reach only one conclusion [contrary to the jury's verdict]." *Plunk*, 92 S.W.3d at 413 (citations omitted).

Turning to the record, at trial, the Chase Parties presented evidence that Taylor King and Jonathan King each owned one-half of a single interest in the Partnership. As

such, any action on the part of Jonathan King would also have bound Taylor King. In short, the Kings were engaged as partners in a joint venture. As explained by this Court:

> Under the joint venture doctrine, "the negligence of one member [of the joint venture] is imputed to all of the other members." ***Fain v. O'Connell***, 909 S.W.2d 790, 793 (Tenn. 1995). To establish the existence of a joint venture among several parties, the Defendants must show that there is (a) a common purpose, (b) some manner of agreement among them, and (c) an equal right on the part of each to control both the venture as a whole and the relevant instrumentality. "Liability predicated on a joint venture theory of mutual responsibility is not imposed in instances in which the parties join together purely for pleasure, but is reserved, rather, for cases in which the parties associate for business, or expense sharing, or some comparable arrangement." The concept of a "joint venture" was described in ***Fain v. O'Connell***:

>> A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure.

> 909 S.W.2d at 793 (quoting 30 Am. Jur., p. 939, Sec. 2).

***Anderson v. U.S.A. Truck, Inc.***, No. No. W2006-01967-COA-R3-CV, 2008 WL 4426810, *15-16 (Tenn. Ct. App. Oct. 1, 2008) (some internal citations omitted). The fact that the Kings were engaged in a joint venture would allow Mr. King to bind Mrs. King in any decisions concerning their joint venture. Furthermore, as set out in Trial Exhibits 7 and 8, in his email correspondence with Mr. Kirkham, Mr. King states that, "Jonathan **and Taylor** King are NOT happy with the outcome of this deal." (Emphasis added). From these exhibits, alone, a reasonable jury could conclude that Mrs. King joined in her husband's contest to Dean Chase's actions as Manager of the Partnership. Moreover, as evidenced by Trial Exhibit 15, on December 30, 2015, within a few days of the distribution of the proceeds from the sale of the Property, Mr. King sent correspondence to another partner, wherein he stated that he was "vigilantly pursuing a

cause of action for the breach of fiduciary duties . . . [against] Dean [Chase]." Importantly, Mrs. King is copied on this communication. From this, and the additional emails that were admitted into evidence, there is sufficient evidence from which a reasonable jury could have concluded that Taylor King was aware, and actively participated in Jonathan King's plan to contest the sale of the Property. Neither of the Kings took the stand to testify otherwise. Accordingly, it was not reversible error for the trial court to deny Taylor King's motion for directed verdict.

## VIII. Damages

Tennessee follows the "American Rule" that "in the absence of a contract, statute or recognized ground of equity so providing there is no right to have attorneys' fees paid by an opposing party in civil litigation." *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979) (citing *Deyerle v. Wright Mfg. Co.*, 496 F.2d 45 (6th Cir.1974); *Carter v. Va. Sur. Co.*, 216 S.W.2d 324 (Tenn. 1948)). Relying on the American Rule, the Kings assert that the Chase Parties cannot recover their attorney's fees and expenses as compensatory damages. Under the very narrow and particular facts of this case, we disagree.

In *Pullman Standard, Inc. v. Abex Corp.*, the Tennessee Supreme Court adopted certain exceptions to the American Rule. First, the Court adopted an exception based on implied indemnity, to-wit:

> [W]e have held in previous cases that costs and attorneys' fees are recoverable under an express indemnity contract if the language of the agreement is broad enough to cover such expenditures, *see Harpeth Valley Utilities District v. Due*, 225 Tenn. 181, 465 S.W.2d 353 (1971); 41 Am.Jur.2d Indemnity § 36 (1968). However, the issue raised in this case, the recovery of litigation expenses and attorneys' fees under an implied indemnity contract, is apparently one of first impression in this state.
>
> We have examined the law in other jurisdictions on this issue. It appears that a majority of courts which have considered the issue allow the recovery of attorneys' fees under an implied indemnity contract in an appropriate case. *See, e.g.*, *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059 (Alaska 1979); *Sendroff v. Food Mart of Connecticut, Inc.*, 34 Conn.Supp. 624, 381 A.2d 565 (1977); *Addy v. Bolton*, 257 S.C. 28, 183 S.E.2d 708 (1971). *See also*, Frumer & Friedman Products Liability § 44.10[1] (1984); 22 Am.Jur.2d Damages § 166 (1965); 42 C.J.S. Indemnity § 24 (1944). Other jurisdictions disallow the recovery of such expenses by relying upon the general rule that attorneys' fees are not recoverable, absent a statute or contract specifically providing for such recovery. *See Kerns v. Engelke*, 76 Ill.2d 154, 28 Ill. Dec. 500, 390 N.E.2d 859, 865 (1979).
>
> We are in agreement with the majority view that attorneys' fees are

recoverable under an implied indemnity agreement in appropriate cases. We continue to adhere to the rule in Tennessee that attorneys' fees are not recoverable in the absence of a statute or contract specifically providing for such recovery, or a recognized ground of equity; however, we recognize an exception to that rule and hold that the right of indemnity which arises by operation of law, based upon the relationship of the parties, see ***Cohen v. Noel***, 165 Tenn. [1 Beel.] 600, 56 S.W.2d 744 (1933), includes the right to recover attorneys' fees and other litigation costs which have been incurred by the indemnitee in litigation with a third party.

***Pullman Standard, Inc. v. Abex Corp.***, 693 S.W.2d 336, 338 (Tenn. 1986).  In ***Pullman Standard***, the Court concluded that the plaintiff's complaint contained sufficient allegations to state a claim for attorney's fees under this theory.  ***Id.*** at 338.  The complaint alleged that the plaintiff, Pullman Standard, was required to defend itself in prior lawsuits because a wheel designed and manufactured by the defendant, Abex Corporation, was defective and caused the damages complained of in those suits.  ***Id***. Accordingly, although the complaint did not allege that Pullman Standard was required to pay a judgment or settlement in the prior lawsuits, the complaint clearly alleged that Pullman Standard was required to defend the prior lawsuits due to the fault of Abex.  In recognizing the right to recover attorney's fees under an implied indemnity theory, the Court explained that this right

> is not based upon the failure of the indemnitor to fulfill an obligation to take over the indemnitee's defense or upon the existence of some benefit to the indemnitor arising from the defense conducted by the indemnitee. Instead, it is, like the right of the indemnitee to be indemnified for any judgment or settlement it pays, based upon the relationship between the parties and their respective degrees of fault.

***Id.*** at 339.  Thus, the indemnitee's right to recover attorney's fees under this theory depends not upon the fact that the indemnitee was required to defend itself in a prior lawsuit, but that the indemnitee was forced to defend itself due to some fault or wrongdoing by the indemnitor.  ***Id.***  Here, the Chase Parties have a right to indemnification from the LLC, but there is no fault on the part of the indemnitor, NV Music Row, LLC; as such, the implied indemnity exception is not clearly applicable. However, in addition to the implied indemnity theory, the ***Pullman Standard*** Court also recognized a second means of recovery for attorney's fees and costs under an independent tort theory, to-wit:

> Pullman's second theory of recovery of attorneys' fees and litigation expenses is based upon the tort of deceit. Again we are faced with an issue of first impression in Tennessee. The Court of Appeals refused to recognize a cause of action for recovery of attorneys' fees based upon an independent

tort because to do so would allow circumvention of its refusal to permit the recovery of such damages under an indemnity theory. In view of our holding that attorneys' fees and litigation expenses are recoverable under an implied agreement to indemnify, the Court of Appeals' justification for refusing to recognize Pullman's second theory of recovery is no longer a concern.

It appears that attorneys' fees and costs are recoverable under an independent tort theory in most jurisdictions which have considered the issue. Indeed, we have been cited to no case, and have discovered none in our own research, which has refused to recognize the theory of recovery. As stated in the annotation to 42 A.L.R.2d 1183 (1956),

> "It appears to be well settled that where the natural and proximate consequence of a tortious act of defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorneys' fees incurred by plaintiff in such action may be recovered as damages against the author of the tortious act." *Id*. at 1186.

The Restatement (Second) of Torts, § 914(2) (1979), cites a similar rule:

> "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

*See also* 22 Am.Jur.2d Damages § 166 (1965). We adopt the prevailing rule and recognize the cause of action set forth above. *See*: **Safway Rental & Sales Co. v. Albina Engine & Machine Works**, 343 F. 2d 129 (10th Cir.1965).

**Pullman Standard**, 693 S.W.2d at 339-40; *accord* **Whitelaw v. Brooks**, 138 S.W.3d 890 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. June 21, 2004) (applying the **Pullman Standard** independent tort exception). The **Pullman Standard** independent tort exception to the American Rule applies when a party, "through the tort of another[,] has been required to act in the protection of his interests by bringing or defending an action **against a third person**. . . ." (Emphasis added). Here, of course, the Chase Parties brought their lawsuit directly against the tortfeasors (i.e., the Kings) and not against a third party. Nonetheless, Tennessee Courts have approached the third party requirement of the independent tort exception differently depending on the particular facts and equities presented in the case. *See* **Grace v. Grace**, No. W2016-00650-COA-R3-CV,

2016 WL 6958887, at *7 (Tenn. Ct. App. Nov. 29, 2016) ("The independent tort exception recognized in **Pullman** and applied by the federal district court in **Edwards Moving** simply does not apply in this case. First, we note that this case involves only claims between Appellee and Appellant. Accordingly, there can be no dispute that Appellee was not required to bring suit against a third party to protect his interests in the underlying lawsuit. *See Pullman*, 693 S.W.2d at 340."); **Whitelaw**, 138 S.W.3d at 894 (Tenn. Ct. App. 2003) (applying the independent tort theory and stating, "The trial court below awarded Whitelaw his attorney's fees, not for the negligence action against Hall, but for the litigation expenses incurred for the action against Brooks and the other landowners holding land interests which encroached upon Whitelaw's realty. . . . Were it not for Hall's negligence, which is not disputed on this appeal, Whitelaw would not have been required to bring that action to clear up his title in court."). *But see Evans v. Young*, No. 01A01-9711-CV-00638, 1999 WL 11510, at *4 (Tenn. Ct. App. Jan. 14, 1999) ("We recognize that, in the instant case, the tortious conduct of Hailey Wrecking and Levy Industrial did not cause Ms. Evans to engage in litigation with a third party. Thus, the 'tort of another doctrine' is not directly applicable. We find, however, that the equitable principles underlying this doctrine are nevertheless relevant considerations in the case at bar. Hailey Wrecking and Levy Industrial conspired with Mr. Young to hinder or prevent the collection of Ms. Evans' judgment. As a direct result of this conspiracy, Ms. Evans incurred almost seven thousand dollars in costs and attorney fees. We find that, under such circumstances, it is appropriate to require Hailey Wrecking and Levy Industrial to pay these expenses.").

We conclude that circumstances presented in this case are best suited to the analysis and reasoning employed in *Evans v. Young*. For the reasons discussed above, it is clear that due solely to the Kings' tort of misrepresentation by concealment, the Chase Parties were "required to act in the protection of [the] interests [of the Partnership]." **Pullman Standard**, 693 S.W.2d at 340 (citing The Restatement (Second) of Torts, § 914(2) (1979)). In other words, "the natural and proximate consequence of a tortious act of [the Kings] has been to involve [the Chase Parties] in litigation." **Id.** (citing 42 A.L.R.2d 1183 (1956)). Here, the Kings do not dispute the amount of damages incurred by the Chase Parties in the form of attorney's fees and costs expended in defense of the Kings' lawsuit, i.e., $677,768.79. Rather, the Kings assert that because the damages are in the form of attorney's fees and costs, the Chase Parties are precluded from recovery under the American Rule. Pursuant to the foregoing discussion, the Chase Parties are entitled to indemnification by NV Music Row, LLC. However, it is undisputed that the LLC retained only $68,650.98 from the Property sale proceeds to cover any contingent liabilities. The record establishes that but for the Kings' concealment of the material fact that they were contemplating bringing their lawsuit to dispute Dean Chase's handling of the Property sale, the LLC would have retained sufficient funds to cover any costs or expenses incurred in defending the lawsuit, which defense was necessary to effect the will of the majority of the partners as evidenced by the Unanimous Consent to sell the Property to Virgin for $11,000,000. Due solely to the Kings' concealment of their plans

- 53 -

and their acceptance of their portion of the sale proceeds prior to bringing their lawsuit, the Chase Parties' were deprived of their right to full indemnification from the LLC and were placed in the position of having to expend their own funds to protect the sale made on behalf of the NV Entities. In this regard, the attorney's fees and expenses that were not available for reimbursement from the LLC were compensatory damages. As noted in *Edwards Moving & Riggin, Inc. v. Lack*, No. 2:14–cv–02100–JPM–tmp, 2015 WL 381953 (W.D. Tenn. June 24, 2015):

> The American rule, however, simply prevents a prevailing litigant from "collect[ing] a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). The American rule does not apply to consequential damages flowing from a separate harm. Under Tennessee law, "'[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.'" *Engstrom v. Mayfield*, 195 F. App'x 444, 451 (6th Cir.2006) (emphasis added) (quoting *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn.1985)).

*Edwards Moving & Riggin, Inc.*, 2015 WL 381953, at *8.

Here, the Chase Parties' attorney's fees and costs were not awarded because they were the "prevailing party" in the litigation, which is what the American Rule is designed to prevent. *Id.* Rather, in this case, attorney's fees and costs were awarded to compensate the Chase Parties for actions they were forced to take to defend the NV Entities against the Kings' unilateral lawsuit. Had the Kings not brought their unsuccessful claims, the Chase Parties would not have expended the fees and costs of defending same. Furthermore, had the Kings disclosed their plan to file suit, the LLC would have retained sufficient funds to indemnify the Chase Parties. The only measure of damages in this case is the attorney's fees and expenses paid by the Chase Parties that were not reimbursed from the LLC. The only reason these fees and expenses were incurred is the tortious act of the Kings. As this Court has explained:

> The purpose of compensatory damages is to compensate a party for the loss or injury caused by a wrongdoer's conduct. The goal is to restore the injured party, as nearly as possible, to the position the party would have been in had the wrongful conduct not occurred. The injured party should be fully compensated for all losses caused by the wrongdoer's conduct.

*Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 58 (Tenn. Ct. App. 2004); *accord Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W. 3d 344, 354 (Tenn. Ct. App. 2007). Under the particular facts of this case, the Business Court's

award of attorney's fees and costs does just this—it compensates the Chase Parties for the loss caused by the Kings' independent tort of misrepresentation by concealment. In this regard, attorney's fees and costs are the sole measure of compensatory damages in this case, and were not awarded punitively. For these reasons, we affirm the award of attorney's fees and costs as damages in this case.

## IX. Conclusion

For the foregoing reasons, we affirm the trial court's orders. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Jonathan King and Taylor King, for all of which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE